**Danny Joe McGEE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–98–00499–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 15, 2000.

---

Kevin Howard, Houston, for appellants.

Rikke B. Graber, Houston, for appellees.

Panel consists of Chief Justice MURPHY and Justices ANDERSON and HUDSON.

### MAJORITY OPINION

PAUL C. MURPHY, Chief Justice.

We withdraw our opinion filed January 20, 2000, substitute the following in its place, and overrule appellant's motion for rehearing.

In this case, we decide if evidence seized from a suspect's anal region should have been suppressed. Because we do not find sufficient information in the record to support the trial court's ruling allowing the admission of the evidence, we reverse its decision and remand this case for further proceedings.

### I. FACTUAL SUMMARY

Houston Police Officer Steven Rowan was contacted one evening by a concerned citizen who told him that three men were selling crack cocaine in the area of Fleming and Cool Wood in Houston. The citizen described the clothes and appearance of the three men, told Officer Rowan the names of two of them, and stated an individual named Joe was hiding narcotics "in his ass."

With this information, Officer Rowan and his partner decided to investigate the

tip. Upon their arrival at the scene, Officer Rowan and his partner found three young men, one of whom was appellant, matching the descriptions given by the citizen. These three were surrounded by a haze of blue smoke, which Officer Rowan stated he thought to be marijuana smoke. The officers approached the three men, noted that the smell of marijuana emanated from all three of them, and proceeded to obtain identification from them. Officer Rowan confirmed that the names matched the names given by the concerned citizen, and determined that two of the men were juveniles. While one of the officers checked the appellant and the two juveniles for weapons, the other officer searched the area around appellant and his friends. This officer discovered a Swisher Sweet cigar containing a small amount of marijuana. Upon this discovery, the officers handcuffed the three, loaded them into the police car, and proceeded to a fire station less than a mile away, refusing to give an explanation for this strange destination.

At the fire station, Officer Rowan obtained some sanitary rubber gloves and proceeded to perform a visual check of the buttocks and external anal area of appellant and one of the two juveniles. During the search of appellant, Officer Rowan requested that appellant bend over a table, lower his pants and underwear, and spread his buttocks. When he refused, Officer Rowan kicked appellant's legs apart, removed appellant's clothing, and spread appellant's buttocks himself. Officer Rowan testified that a plastic covered object was in "plain view" lodged between appellant's buttocks. A field test showed this object to be crack cocaine. Officer Rowan testified that appellant was then placed under arrest and charged with possession of a controlled substance.

At the hearing on his motion to suppress, appellant related a different story from that of Officer Rowan. Appellant claimed that when the officers initially checked him for weapons, they also pulled on the waistband of appellant's pants and underclothes and looked down the front and back of appellant's pants, apparently in a search for crack cocaine. Appellant also claimed that the cocaine was not in plain view when Officer Rowan performed his search at the fire station. Rather, the cocaine was discovered after Officer Rowan probed inside appellant's anal cavity for an extended period of time. Appellant's testimony was buttressed by one of the juveniles, who testified that Officer Rowan also digitally explored his anal cavity.

The trial court overruled the motion. Appellant then pled guilty to the State's possession charges, and instituted this appeal. Appellant asserts that the trial court erred in denying his motion to suppress because the narcotics were fruits of an unconstitutional arrest and search.

## II. PRELIMINARY ANALYSIS

Before we can examine the propriety of the trial court's ruling on the motion to suppress, however, we must conduct a preliminary analysis to determine whether we can reach this issue at all. *See Gonzales v. State,* 966 S.W.2d 521, 524 (Tex. Crim.App.1998). In cases such as this one where the appellant pleads guilty after the trial court denies his motion to suppress, appellate courts must perform a two-pronged analysis. We must first identify what "fruits" the trial court refused to suppress. *See id.* (citing *McGlynn v. State,* 704 S.W.2d 18, 21 (Tex.Crim.App. 1982)). The second part of the test requires an analysis of whether or not those fruits were somehow used by the State. *See id.* (citing *Kraft v. State,* 762 S.W.2d 612, 613–14 (Tex.Crim.App.1988)). If either of these prongs is not satisfied, we cannot address the merits of appellant's claim. *See id.*

In the present case, the first prong of the test is easily determined from the record. The fruit of the search is the crack cocaine recovered from appellant's anal region.

The second part of this analysis, in contrast, is not as apparent. Nothing in the record shows that appellant based his plea on the trial court's decision to admit the cocaine. Even though this is the case, the cocaine found on appellant strongly incriminates him on the possession charge asserted by the State. Since this evidence is incriminating, we find that it has been used against appellant, giving us the right to entertain his appeal. *See Kraft,* 762 S.W.2d at 615.

Turning to the merits of the appellant's challenge to the trial court's ruling, we must set up the standard of review in cases of this nature. We review a trial court's ruling on a motion to suppress based on an abuse of discretion standard. *See Long v. State,* 823 S.W.2d 259, 277 (Tex.Crim.App.1991). At a hearing on a motion to suppress, the trial court is the sole trier of fact and judge of the witnesses' credibility and the weight to be given their testimony. *See Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). The trial judge may choose to believe or disbelieve any or all of a witness's testimony. *See Green v. State,* 934 S.W.2d 92, 98 (Tex.Crim.App.1996). We must afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *See Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We also afford nearly complete deference to the trial court's rulings on "mixed questions of law and fact," such as probable cause and reasonable suspicion, where the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *See id.* Further, the evidence is viewed in the light most favorable to the trial court's ruling. *See Whitten v. State,* 828 S.W.2d 817, 820 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd).

## III. THE WARRANTLESS ARREST CHALLENGE

We find that the trial court must have found appellant to be under arrest prior to the search for the search to be justifiable, especially since an intrusive search such as that conducted by Officer Rowan cannot be conducted on reasonable suspicion. *See Schmerber v. California,* 384 U.S. 757, 770, 86 S.Ct. 1826, 1835, 16 L.Ed.2d 908 (1966). Under Texas law, the point at which a person is under arrest is clear. "A person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person acting without a warrant." TEX.CODE CRIM. PROC. ANN. art. 15.22 (Vernon 1994); *see also Hawkins v. State,* 758 S.W.2d 255, 259 (Tex.Crim.App. 1988). "An arrest is complete when a person's liberty of movement is restricted or restrained." *Chambers v. State,* 866 S.W.2d 9, 19 (Tex.Crim.App.1993), *cert. denied,* 511 U.S. 1100, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994). Conversely, an individual is not in custody or under arrest when he acts on the "invitation, urging or request of a police officer, and [is] not being forced, coerced or threatened." *Id.*

When a defendant seeks to suppress evidence because of an illegal arrest that violates the federal or state constitution, the defendant bears the initial burden to rebut the presumption of proper police conduct. *See Russell v. State,* 717 S.W.2d 7, 9 (Tex.Crim.App.1986); *Johnson v. State,* 834 S.W.2d 121, 122 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd). The defendant meets this burden by proving that police seized him without a warrant. *See Russell,* 717 S.W.2d at 9. Once the defendant establishes that a warrantless search or seizure occurred, the burden shifts to the State either to produce evidence of a warrant or to prove the reasonableness of the search or seizure pursuant to one of the recognized exceptions to the warrant requirement. *See id.*

Here, the uncontroverted testimony elicited at the hearing revealed that prior to taking appellant to the fire station,

Officer Rowan and his partner placed appellant in handcuffs and placed him in the back of the police vehicle. Officer Rowan testified that, at this point in appellant's detention, he was neither under arrest nor free to leave. Based on this testimony we find the only reasonable inference is that appellant was under arrest at the time the search was conducted, since his liberty of movement was restrained from the moment that he was handcuffed and placed in the police car. Further, it is clear from the record that appellant's arrest was warrantless. Since the evidence here clearly established the absence of a warrant, the burden rested upon the State to prove the existence of a valid exception.

In Texas, warrantless arrests are authorized only if (1) there is probable cause with respect to the seized individual, and (2) the arrest falls within one of the statutory exceptions delineated in the Code of Criminal Procedure. *See Stull v. State,* 772 S.W.2d 449, 451 (Tex.Crim.App. 1989). Probable cause exists "when the facts and circumstances within the officer's personal knowledge and of which he has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in the belief that, more likely than not," a particular suspect has committed a crime. *Muniz v. State,* 851 S.W.2d 238, 251 (Tex.Crim.App.1993).

We find sufficient factual information on the record to support probable cause for appellant's arrest. The concerned citizen informed Officer Rowan that appellant was in possession of and trafficking in illegal narcotics. Officer Rowan had found this informant reliable in the past. When the officers arrived on the scene, they observed a cloud of marijuana smoke around appellant and the two juveniles, whose descriptions perfectly matched the descriptions given by the informant. Further investigation revealed that the names given by the informant matched the names of the appellant and his cohorts. The officers also found marijuana in the area around appellant and the two juveniles,

although they did not witness any of them actually use the marijuana. Officer Rowan testified that, based on all of these facts, he believed it more likely than not appellant and his friends had been using narcotics just prior to his arrival on the scene. Based on the "laminated total" of these facts, we determine that the trial court did not abuse its discretion in determining Officer Rowan had probable cause to arrest appellant. *See McNairy v. State,* 835 S.W.2d 101, 106 (Tex.Crim.App.1991) (citing *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1948)).

The State also has the burden of proof to show that a statutory exception allowing warrantless arrests applies, a burden which it fails to meet in this case. On appeal, the State argues that TEX.CODE CRIM. PROC. ANN. art. 14.04 justifies appellant's warrantless arrest. This provision states:

"Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused."

TEX.CODE CRIM. PROC. ANN. art. 14.04 (Vernon 1994). Thus, the State can utilize this exception if it shows it had "satisfactory proof" from a "credible person" that: (1) a felony had been committed; (2) the appellant was the offender; and (3) the appellant's escape was imminent. *DeJarnette v. State,* 732 S.W.2d 346, 349 (Tex.Crim.App. 1987); *Sklar v. State,* 764 S.W.2d 778, 780 (Tex.Crim.App.1987); *Morelos v. State,* 772 S.W.2d 497, 501 (Tex.App.-Houston [14 th Dist.] 1989, pet. ref'd). To utilize this provision, the "concrete factual situation spread on the record" must justify its application. *Stanton v. State,* 743 S.W.2d 233, 235 (Tex.Crim.App.1988). This exception is strictly construed. *DeJarnette,* 732 S.W.2d at 349. Because the State satisfied

only three of the exception's four criteria at the hearing, we must remand this case to the trial court.

 Here, we find the State has satisfied the "credible person" criterion of this exception. The State argues that the citizen's information is inherently credible, relying on the proposition that a concerned citizen, whose only contact with police is due to having witnessed a crime, is presumed reliable. This argument assumes the fact that the informant must be named or disclosed. *See Esco v. State,* 668 S.W.2d 358, 360–61 (Tex.Crim.App.1982). Here, the informant's identity was not disclosed. Even though the citizen's reliability may not be presumed, Officer Rowan testified that he had relied on information provided by this concerned citizen before and had found him reliable. Though he also testified that he had not used information from this person before, if we resolve this factual dispute in favor of the trial court's denial of appellant's motion, we find a sufficient factual basis to satisfy this element of the statute.

The State also satisfied the "felony" requirement of Article 14.04. The citizen told police that appellant possessed and sold cocaine. Both of these offenses are felonies. *See* Tex. Health & Safety Code Ann. § 481.112 (Vernon Supp.1998) (delivery of cocaine); Tex. Health & Safety Code Ann. § 481.115 (Vernon Supp.1998) (possession of cocaine). Thus, Officer Rowan was informed by a credible person that a felony had been committed.

Further, the State easily satisfied the requirement that appellant was the offender. The informant told officers that the appellant was both selling and in possession of crack cocaine. In fact, the informant mentioned the appellant by name. We therefore find sufficient proof in the record to satisfy this element.

 Though the State satisfied these three elements at the hearing, it failed to meet its burden in proving the "escape" criterion. As the State correctly argues:

> Article 14.04 ... does not require a showing that the offender in fact was about to escape, nor does it require a showing that there in fact was not time to procure a warrant. The statute merely requires a showing that the officer was acting upon satisfactory proof from representations by a credible person that the felony offender is about to escape, so that there is no time to procure a warrant.

*Fry v. State,* 639 S.W.2d 463, 476 (Tex. Crim.App.1982). This element can be satisfied by a number of factors, including temporal proximity to the commission of the crime, physical proximity to the crime scene, and the suspect's knowledge of police pursuit. *See DeJarnette,* 732 S.W.2d at 352–53. However, none of these factors is dispositive of the issue. *See id.*

This case is factually similar to two other cases decided by the Court of Criminal Appeals, *Hardison v. State,* 597 S.W.2d 355 (Tex.Crim.App.1980) and *Pearson v. State,* 657 S.W.2d 120 (Tex.Crim.App. 1983).

In *Hardison,* an unidentified informant told police that the appellant was dealing heroin in front of a barber shop on a particular street. *See* 597 S.W.2d at 356. The informant described the appellant's clothing and stated that he stored the encapsulated heroin in his hatband. *Id.* The officer testified that he had used the informant on at least twelve prior occasions, and his information had proven reliable every time. *See id.* The officers went to the location immediately after being given the tip and observed the appellant for five to ten minutes. *See id.* at 356–57. Even though he did not commit a felony during this time, the officers approached the appellant, took his hat, and, upon finding heroin in the hatband, arrested the appellant. *See id.* at 357. The officer testified that he knew he could obtain a warrant, but gave no reason why he could not obtain one. *See id.* The court ruled this

arrest invalid under art. 14.04 because there was no showing that the appellant was about to escape. *See id.* Although the test applied in *Hardison*, that there must be a showing that the suspect was about to escape, was later replaced with a lower threshold in *Fry, see* 639 S.W.2d at 476, we still find its facts a compelling analogue to this case.

In *Pearson*, an unidentified, reliable informant notified police that the appellant was at a bar and had in his possession a Tylenol box containing heroin. *See* 657 S.W.2d at 120. The informant told police that the Tylenol box was located in the appellant's vest pocket. *See id.* The police officers went to the bar, asked the appellant, who was on duty and at work in the bar, to come outside with them, and placed him under arrest. *See id.* at 121. They discovered the Tylenol box containing heroin exactly where the informant said it would be. *See id.* Looking to *Hardison* for guidance, the court there held the warrantless arrest invalid because there was no showing that the officers were acting upon satisfactory proof from a credible source that the appellant was about to escape. *See id.*

Here, there is also no showing that appellant was about to escape. There is no evidence that appellant had been informed of the police investigation. Appellant was found exactly where the citizen told officers he would be found. Further, when the officers approached the appellant and asked him to place his hands on the patrol car, he complied. Rather than indicating that appellant was about to escape, the facts of this case seem to indicate the contrary.

The State relies heavily on *DeJarnette* in support of its argument that the officers perceived appellant was about to escape. In that case, a bystander observed two men apparently rob another man on the street, throw him down, kick him, stab him, and then walk away. *See* 732 S.W.2d at 348. The eyewitness described the assailant to police officers. *See id.* Officers

began asking people in the area if they had observed anyone matching the assailant's description. *See id.* One person stated that he had seen someone matching that description at a bar a few blocks away. *See id.* Fifteen minutes after the crime was committed, the officers proceeded to the area around the bar, observed appellant walking away from the scene on a public street, and arrested him. *See id.* The court held this arrest valid under Article 14.04, since the totality of the circumstances supported the arresting officer's belief that appellant was attempting to escape. *See id.* at 353.

We find this case to be far more similar to *Hardison* and *Pearson* than *DeJarnette*. Here, there was no evidence that appellant was about to escape, either from the citizen's tip or from the officers' observations. In *DeJarnette*, the appellant had fled the scene and was seen walking away from the area where the crime was committed. Further, the facts of the case established a close proximity in time between the commission of the crime and the suspect's apprehension. Here, there is no evidence in the record to substantiate escape on the part of appellant, nor is there sufficient information from which to judge temporal proximity. Thus, we do not find *DeJarnette* dispositive of this case.

The State argues that we should infer escape since appellant was found on a public street, again relying on language in *DeJarnette*. We cannot agree. To so hold would be to eviscerate the general rule that officers obtain a warrant prior to an arrest, since every warrantless arrest in a public place would become justifiable under Article 14.04. Further, we are not inclined to believe that *DeJarnette* stands for the proposition that suspects found on public streets are inherently about to escape. Rather, we feel that the suspect's presence on a public street is yet another factor to consider when analyzing escape under Article 14.04. *See DeJarnette*, 732 S.W.2d at 353 n. 3 ("In the instant case, however, appellant was found on a public

street *in the act of leaving the scene very shortly after commission of the offense.* Without considering more than the facts presented in the instant case, we find that appellant's acts in *leaving the scene* so closely after commission of the offense are relevant to the issue of imminent escape.") (emphasis added).

Here, no evidence supporting escape was offered at the motion to suppress hearing. Because the State failed to meet its burden, we find no evidence to support the trial court's denial of appellant's motion to suppress on this issue.

Although the State failed to brief or argue the application of any other exception, we find no evidence in the record supporting warrantless arrests under TEX. CODE CRIM. PROC. ANN. arts. 14.01 and 14.03. Article 14.01 allows a peace officer to arrest an offender without a warrant for any offense committed within his presence or view. *See* TEX.CODE CRIM. PROC. ANN. art 14.01. This article has been interpreted to allow a warrantless arrest when the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing the arrested person was committing an offense. *See Stull,* 772 S.W.2d at 451. Article 14.03 allows a warrantless arrest when a suspect is found in a suspicious place and under circumstances which reasonably show that such person has committed a felony or is about to commit some offense against the law.

We find no evidence in the record to support appellant's warrantless arrest under Article 14.01. Here, the officer testified that he arrested appellant based on the informant's tip that he was in possession of crack cocaine. We cannot find that an anonymous tip that is not corroborated by the officer's observations or investiga-

tion prior to arrest will support an arrest under 14.01.[1]

Likewise, we find no evidence to support an arrest under 14.03. The only subsection of this article available to the State is 14.03(1) since there is no evidence in the record that appellant had committed an assault or was in violation of a protective order. There was no evidence in the record that the defendant was found in a suspicious place. Rather, he was found walking down a street with two other individuals, and the arresting officer gave no testimony that he found this particular street suspicious. Accordingly, Article 14.03 does not support appellant's warrantless arrest.

## IV. HARM

 Having reached this conclusion, we must now conduct a harm analysis. *See* TEX.R.APP. PROC. 44.2(a) (Vernon Pamph.1999); *see also State v. Daugherty,* 931 S.W.2d 268, 273 (Tex.Crim.App.1996). Factors the Court should consider in this analysis include: (1) the source of the error; (2) the nature of the error; (3) whether or to what extent it was emphasized by the State; (4) the error's probable collateral implications; (5) how much weight a juror would probably place on the error; and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. *See Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App.1989).

 An application of these factors reveals that this error was not harmless. First, the source of this error was the police officer, who on the record admitted that he felt that a strip search of appellant was justified during an investigatory stop. Second, this error was constitutional in nature, since the search deprived appellant of his right to be free from unreasonable searches and seizures under the Texas Constitution. Third, though the case did

---

1. Under the recent Supreme Court case, *Florida v. J .L.,* an anonymous tip by itself will not even justify an investigative detention, even if the description of the suspect given by the informant is proven correct by the officer's investigation. *See Florida v. J. L.,* —— U.S. ——, ———–———, 120 S.Ct. 1375, 1378–79, 146 L.Ed.2d 254 (2000).

not go before a jury, it is doubtless that the State would place great emphasis on the narcotics in its argument to the jury, since the narcotics seized from appellant are the only direct evidence possessed by the State establishing that he was in possession of a controlled substance. Fourth, the collateral consequences of the trial court's error probably resulted in appellant's guilty plea, even though the evidence used to obtain that plea might have been obtained in violation of appellant's rights. Fifth, a jury would probably place great weight on the admissibility of the evidence for the same reason it is important to the State's case-it is the only direct evidence of the crime. Finally, holding this error harmless would likely foster the continuation of this practice by police officers, especially since Officer Rowan testified that such arrests and searches were common practice. Thus, the trial court's decision should be reversed on this ground.

## V. Appellant's Challenge to the Constitutionality of the Search

Even assuming, however, that appellant's arrest was constitutional, he contends that the officer's search of him was unconstitutional.[2] We agree.

Appellant was arrested and taken to a fire station several minutes from the scene. Once there, the officers took appellant to a secluded area of the fire station, made appellant bend over a table, and asked him to lower his pants and underwear. When appellant refused, the officer kicked his legs apart, pulled down appellant's pants, and, using rubber gloves, spread appellant's buttocks. The officer testified that the contraband was protruding from appellant's anus. He also testified that HPD had no policy allowing this type of search at public buildings near the scene, but it was common practice among the officers working in the area where the arrests were made to perform such searches. Moreover, the officer testified that he believed the search was necessary because if all three suspects were in the car and one of them managed to remove the contraband from his person and sequester it in the vehicle, it would be impossible to prove to whom the contraband belonged.

Though appellant argues that the officer conducted a search involving an extended intrusion into his anal cavity, if we resolve this dispute in favor of the court's judgment, we find that the officer's search is properly analyzed as a strip search or visual body cavity search. *See, e.g., Blackburn v. Snow,* 771 F.2d 556, 561 n. 3 (1985) (holding that a visual inspection of the buttocks and anus of a suspect was properly analyzed as a strip search rather than a body cavity search). Though visual body cavity searches are considered intrusive, they are not as intrusive as manual body cavity searches and are judged by a lesser standard. *Compare Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (involving the extraction of blood) *with Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (involving the strip searches of prisoners). Nor has the Supreme Court or any Texas court addressed the issue of when a strip search or visual body cavity search incident to arrest may or may not be appropriate. *See, e.g., Illinois v. Lafayette,* 462 U.S. 640, 646 n. 2, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). Some common elements exist, however, when analyzing any search proposed to be in violation of the Fourth or Fourteenth Amendments. As the Supreme Court has noted:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the

---

**2.** Due to the complete absence of any Texas precedent on this issue, we believe it is appropriate to seek guidance from federal cases addressing this or similar issues.

particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Bell,* 441 U.S. at 559, 99 S.Ct. 1861. Applying this test to the case at hand, we find the search conducted by Officer Rowan was unconstitutional and find that the contraband seized in the search should have been suppressed as the fruit of an illegal search.

### Scope of the intrusion

■ Here, the State concedes that the search was a visual body cavity search since it involved appellant exposing his anus to the officer for his inspection. Courts have found that searches similar to the one conducted by Officer Rowan in the present case are dehumanizing, demeaning, undignified, terrifying, and embarrassing. *See Swain v. Spinney,* 117 F.3d 1, 6 (1 st Cir.1997); *Mary Beth G. v. Chicago,* 723 F.2d 1263, 1272 (7 th Cir.1983) Due to the privacy interests involved in effecting strip searches and visual body cavity searches, there is a need for courts to give close scrutiny to them. *See* 3 WAYNE R. LAFAVE, SEARCHES AND SEIZURES 3d ed., § 5.3(c), 131 (1996).

### Manner in which the search was conducted

First, the manner in which the search was conducted did little to alleviate the negative impact of the search. Appellant was taken to a fire station and, while still wearing handcuffs, was forced to lay over a table. Once appellant's buttocks were exposed, the officer admitted telling him that he wanted to "make this as painless as possible." This statement had the effect of increasing appellant's anxiety and draws further into question the manner in which the search was conducted.

■ Strip searches must be conducted in such a way as to protect the privacy of the person searched. *See Timberlake by Timberlake v. Benton,* 786 F.Supp. 676, 692 (M.D.Tenn.1992). This protection is no less important in a visual body cavity search. Here the record reveals the officers also did little to safeguard appellant's privacy. The search was conducted inside an enclave of a fire station, rather than a separate room. There is no testimony the search was protected from the view of any fire station employee or visitor who happened to pass by the area in which the search was conducted. The relevant inquiry is whether the search was conducted within the view of those in the vicinity, not whether anyone actually viewed the search. *See Logan v. Shealy,* 660 F.2d 1007, 1014 (4 th Cir.1981). Here, we do not find sufficient evidence in the record to support the conclusion that appellant's privacy interest was adequately protected.

Officer Rowan also testified that he did not believe the suspect was under arrest until after the contraband was found. This supports the conclusion that the officer believed that he had the authority to conduct a strip search of a suspect without first placing him under arrest. Though this factor is not determinative on the issue of whether appellant was actually under arrest, we find it is worth considering in our analysis of this issue.

■ Finally, the officer testified that searches such as this were commonplace among Houston Police officers. We find the practice of conducting strip searches and visual anal cavity searches of suspects based on little more than tips from unnamed informants clearly beyond the parameters of the Fourth Amendment.

### Justification for the search

■ Second, the justification offered by the officers also does not seem to warrant their conduct. At the hearing, the officer stated that the search was necessary to prevent the suspects from stashing contraband in the patrol car, thus making a conviction for possession of the contraband unlikely. Though the officer's point is well taken, we believe it is worthwhile to

evaluate other alternatives available to the officer in balancing this decision against appellant's privacy interests. *See United States v. Sharpe*, 470 U.S. 675, 687, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).

Officer Rowan and his partner had at least two alternatives which would have achieved this purpose. First, Officer Rowan and his partner arrested appellant. The record reveals that they were not in separate cars and traveled together. We think it a reasonable alternative that one officer could have watched the suspects while the other drove to the station. This alternative could have minimized the potential for appellant's humiliation while achieving the same purpose. Second, Officer Rowan testified that he could have called for back-up units to transport appellant and the other two suspects to the station separately, but he did not believe back-up necessary in this case. This alternative, too, would have minimized the invasion of appellant's privacy and protected the State's interest in prosecuting those in possession of contraband.

In addressing the propriety of the search, we must not address whether other alternatives were available, but "whether the police acted unreasonably in failing to recognize or pursue" the alternatives. *See Sharpe*, 470 U.S. at 675, 105 S.Ct. 1568. Here, due to the ease with which these alternatives could have been effected, we find the officers were unreasonable in failing to pursue them.

#### Where the search was conducted

As mentioned earlier, the search was conducted at a fire station near the scene of appellant's arrest. It was not conducted in a separate room, nor was it conducted at the police station, where the opportunity to better protect the privacy of appellant would have clearly been available. Again, we believe this factor weighs in favor of suppressing the contraband recovered from appellant.

### VI. Harm

Based on our earlier analysis of harm in this case, we find appellant was harmed by this search.

Because we find the trial court's decision to allow the admission of the contraband seized from appellant was incorrect, we reverse its decision and remand this case for proceedings consistent with this opinion.

J. HARVEY HUDSON, Justice, dissenting.

Because I believe the police were authorized to arrest appellant and perform a search of his person incident to that arrest, I respectfully dissent.

The facts surrounding appellant's arrest are disputed. In such cases, we must begin our review by deferring to the lower court's determination of the historical facts. *See Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App.1997). Examining the record in the light most favorable to the trial court's ruling, it appears the police were contacted by a concerned citizen whose reliability had been established on previous occasions.[1] This person reported to police that three men were presently selling crack cocaine near the intersection of Fleming and Cool Wood. The citizen further gave the police the names of the three men, described their appearance in detail, and said appellant was hiding the cocaine "in his ass."

Recognizing from their past experience that narcotics dealers commonly hide con-

---

1. The arresting officer gave conflicting testimony regarding whether the citizen had provided him with reliable information on a previous occasion. However, at a suppression hearing, the trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses, as well as the weight to be given their testimony. *See DuBose v. State*, 915 S.W.2d 493, 496 (Tex.Crim.App.1996). Thus, in the absence of specific findings, we must presume the trial judge found the citizen's reliability had been previously established.

traband between their buttocks, the police proceeded to the intersection of Fleming and Cool Wood where they saw three men matching the description given by the citizen. The officers also noticed the men were surrounded by a cloud of "blue" smoke. The officers approached the men, confirmed their identities by name, smelled the odor of marihuana on all three suspects, and found a small quantity of marihuana in a cigar wrapper on the ground.

Thus, the police were able to corroborate several important aspects of the informant's tip by independent means; the men were (1) at the specified location, (2) at the time stated, (3) matching the description given, and (4) answering to the names provided by the informant. All that remained to be determined by the police was whether appellant had cocaine hidden in his pants. However, the reliability of the informant's tip was made all the more convincing by several unexpected circumstances—the men were enveloped in a cloud of smoke, the police smelled the odor of marihuana, and the police found a small quantity of marihuana on the ground.[2] At this point, I think the police had abundant probable cause to believe appellant was also hiding cocaine between his buttocks. In other words, the police had probable cause to believe appellant was committing an offense in their presence.

### Article 14.01

"A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." TEX.CODE CRIM. PROC. ANN. art. 14.01 (Vernon 1977). Thus, an officer may properly arrest without a warrant where facts and circumstances within the officers' knowledge and of which he had reasonably trustworthy information are sufficient to warrant a prudent man in believing that the arrested person is committing an offense. *See Beverly v. State,* 792 S.W.2d 103, 105 (Tex.Crim.App.1990); *Magic v. State,* 878 S.W.2d 309, 312 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd); *see also Stull v. State,* 772 S.W.2d 449, 452 (Tex.Crim.App. 1989) (noting that "this Court has previously upheld arrests under Article 14.01(b) when the police officers personally observed behavior that although not overtly criminal, was, when coupled with the officers' prior knowledge, sufficient to establish probable cause that an offense was then occurring").

Here, the police had probable cause to believe the appellant and his companions were in possession of marihuana. *See Isam v. State,* 582 S.W.2d 441, 444 (Tex. Crim.App. [Panel Op.] 1979) (upholding an arrest under 14.01(b) based solely on officers smelling marijuana); *Joseph v. State,* 3 S.W.3d 627, 635 (Tex.App.-Houston [14 Dist.] 1999, no pet.) (noting that "[t]he odor of marijuana may, by itself, supply probable cause for a warrantless arrest" under § 14.01(b)); *De Jesus v. State,* 917 S.W.2d 458 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd) (holding that a narcotics dog alert on a piece of luggage was sufficient to support an arrest under 14.01(b)); *Cooper v. State,* 629 S.W.2d 69, 71 (Tex. App.-Dallas 1982) (holding that an arrest and search was permissible under 14.01(b), because the "smell of marihuana supplies probable cause for an officer to believe that an offense is being committed in his presence"), *rev'd on other grounds,* 648

---

2. Even a cursory inspection of the case law of this state demonstrates that persons engaged in narcotics trafficking frequently possess more than one type of contraband. *See, e.g., Hernandez v. State,* 938 S.W.2d 503, 505 (Tex. App.-Waco 1997, pet. ref'd) (appellant convicted of delivering cocaine and marihuana); *Johnson v. State,* 900 S.W.2d 475, 475 (Tex. App.-Beaumont 1995), *aff'd as modified,* 930 S.W.2d 589 (Tex.Crim.App.1996) (delivery of cocaine and marihuana); *Perea v. State,* 870 S.W.2d 314, 317 (Tex.App.-Tyler 1994, no pet.) (family members involved in selling marihuana and cocaine); *Chavez v. State,* 866 S.W.2d 62, 65 (Tex.App.-Amarillo 1993, pet. ref'd)(appellant sold both cocaine and marihuana); *Guerra v. State,* 760 S.W.2d 681, 685 (Tex.App.-Corpus Christi 1988, pet. ref'd) (appellant was involved in distribution of cocaine, hashish, heroin, and marihuana).

S.W.2d 315 (Tex.Crim.App.1983); *see also State v. Ensley*, 976 S.W.2d 272, 275 (Tex. App.-Houston [14th Dist.] 1998, pet. ref'd) (noting that "when a police officer smells marihuana, probable cause exists to search for that marihuana"); *Jackson v. State*, 745 S.W.2d 394, 396 (Tex.App.-Houston [1st Dist.] 1987, pet. ref'd) (holding that the "smell of burning marijuana was, in itself, probable cause for the officer to make further investigation to determine whether an offense was being committed in his presence"); *Saenz v. State*, 632 S.W.2d 793, 795 (Tex.App.-Houston [14th Dist] 1982, pet. ref'd) (finding the smell of raw marijuana to be sufficient to establish probable cause to search).

Further, the presence of contraband only heightened the credibility of the informant. Thus, the officers also had probable cause to believe appellant was in possession of crack cocaine and that it was hidden between his buttocks. Under Article 14.01, it is not necessary that an officer be certain that an offense has been or is being committed, so long as he has reasonably trustworthy information that would warrant a prudent person in believing that the arrested person has committed or is committing an offense. *Id.* Moreover, in assessing probable cause to believe an offense has been or is being committed, the officer is not restricted solely to information or facts which he has personally observed. *See Beverly v. State*, 792 S.W.2d 103, 105 (Tex.Crim.App.1990) In addition to his own observations, an officer may rely on reasonably trustworthy information provided by another person in making the overall probable cause assessment. *Id.; see also Astran v. State*, 799 S.W.2d 761, 764 (Tex.Crim.App.1990).

Accordingly, I believe the police were authorized under Article 14.01 to arrest appellant without a warrant.

### Article 14.03

A peace officer may also arrest without a warrant any person found in a suspicious place or under circumstances which reasonably show that he has committed a felony or is about to commit some offense against the laws of this state. *See* Tex. Code Crim. Proc. Ann. art. 14.03 (Vernon Supp.2000).

In *Romero v. State*, 709 S.W.2d 53 (Tex. App.-Fort Worth 1986, no pet.), a woman told a police officer that her ex-husband had beaten her. The officer could see that the woman had a cut lip, blood in her hair, and a swollen eye. The woman described and named her assailant, said she was fearful he would return, and that he had recently been living with some friends one block away. Approximately 45 minutes to an hour later, the officer spotted a person fitting the description of the woman's ex-husband sitting on the porch of a house about a block away from the woman's residence. When the officer inquired as to his identity, the man gave the officer a fictitious name. However, in the officer's opinion, the man matched a photograph given to him by the woman. The man was arrested and found in possession of cocaine. Citing Article 14.03, the court wrote: "The former wife's obvious injuries; plus her statements recounting his assault; plus her fear that he would do it again; plus his location only a block away; plus appellant's giving of a false name and other lies all compounded to give Endsley, the policeman, all the probable cause he needed to make an immediate arrest."

Similarly, here the police: (1) had been given a detailed report by a concerned citizen that appellant and two other named and described individuals were presently selling cocaine at a specific location; (2) knew the citizen was reliable because he had previously given police information that proved to be true and correct; (3) were told the appellant was hiding his contraband between his buttocks; (4) knew from experience that this was a common method of hiding contraband; (5) observed and confirmed all aspects of the information provided by the citizen other than possession of cocaine; (6) smelled the odor of marihuana on the appellant; and

(7) found a small amount of marihuana on the ground. As in *Romero,* I believe that under Article 14.03, the police had all the probable cause they needed to make an immediate arrest.[3]

### Search Incident to Arrest

The police are authorized to search all persons lawfully arrested by them. *See Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694 (1969). Thus, once a person has been lawfully arrested, his privacy interests must yield, for a reasonable time and to a reasonable extent, to permit the police to search for weapons, means of escape, and evidence. *See Oles v. State,* 993 S.W.2d 103, 107 (Tex.Crim.App.1999). Whether a "strip search" is reasonable, depends upon the facts and circumstances because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. *See Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In each case, courts are required to balance the need for the particular search against the invasion of personal rights that the search entails. *Id.* Accordingly, courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Id.*

There are few exercises of authority by the state that intrude on the citizen's privacy and dignity as severely as a "strip search." *See Mary Beth G. et al. v. City of Chicago,* 723 F.2d 1263, 1272 (7th Cir. 1983). However, where a person is in custody following a lawful arrest and there is probable cause to believe a controlled substance is hidden on or within the person's body, limited measures are permissible under the Fourth Amendment to recover the evidence. *See Salinas v. Breier,* 695 F.2d 1073, 1085 (7th Cir.1982). Thus, a post-arrest search of the person may, under some circumstances, include requiring a suspect to remove his clothes and submit to a visual inspection of his person. *See United States v. Klein,* 522 F.2d 296, 300 (1st Cir.1975).

Here, the police had probable cause to believe appellant was hiding cocaine between his buttocks. The most expedient method of confirming or refuting this proposition was to conduct an immediate search. Further, the police had not only the authority, but the duty to seize the contraband. To protect appellant's privacy, he was taken to a nearby fire station. There the police conducted a search that was focused upon and restricted to the specific area where they had probable cause to believe appellant was hiding the cocaine. While the search at the fire station was undoubtedly humiliating, I see no evidence it would have been less humiliating had it been performed at the jail.

Under the circumstances presented here, I believe the intrusion on appellant's privacy was a reasonable search incident to a lawful arrest. Accordingly, I respectfully dissent.

---

**3.** *See Rodriguez v. State,* 775 S.W.2d 27 (Tex. App.-Houston [14th Dist.] 1989, pet. ref'd), where a Houston Police Narcotics Division officer received word from a reliable and credible confidential informant that appellant would soon arrive at a certain McDonald's restaurant driving a vehicle containing a large amount of cocaine. Approximately a dozen police officers converged on the crowded location with weapons drawn. Appellant was arrested without a warrant as he walked from the parking lot. After his arrest, appellant gave a written consent to search his vehicle and advised police that it contained five duffle bags of cocaine. On appeal, Rodriguez challenged the validity of his arrest. This Court held the record supported a finding of probable cause for a warrantless arrest of the defendant on suspicion of possession of a controlled substance. *Id.* at 31.