Affirmed and En Banc Opinion filed September 28, 2004









Affirmed and En Banc Opinion filed September 28, 2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00194-CR

____________

 

WESLEY LANIER
RICHARDS,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 248th
District Court

Harris County, Texas

Trial Court Cause No. 904,131

 



 

E N  
B A N C   O P I N I O N

Appellant pleaded no contest to
misdemeanor possession of a controlled substance and the trial court assessed
punishment at six months= deferred adjudication.  In six issues, appellant contends the trial
court erred in denying his motion to suppress evidence because (1) he should
have been given alternatives to having his car impounded, (2) the applicable
written guidelines of the Houston Police Department are unconstitutionally
vague, (3) the police officers unconstitutionally acted in bad faith by
impounding his car, and (4) the search of his car was unconstitutional because
it was not conducted pursuant to any established inventory guidelines.  We affirm.








FACTUAL AND PROCEDURAL BACKGROUND

On November 10, 2001, Houston Police
Department Officers Terry Shane Seagler and David Myers were working on a
special assignment of guarding the mayor=s house on
Potomac.  The officers were in plain
clothes and in an unmarked pickup truck. 
Officer Seagler observed appellant=s car approaching
and saw a passenger, Steve Douglas, throw a pumpkin at a parked car.  The pumpkin damaged the parked car=s trunk and left
tail light. 

The officers pursued appellant and
observed him run a stop sign, fail to signal a turn, speed, and run a stop
light.  The officers caught up with
appellant and Officer Seagler identified himself as a police officer.  Appellant then stopped his car on Russet, a
dead-end street.  The officers requested
backup and interviewed appellant, Douglas, and two additional juvenile
passengers. 

Officers David Giannavola and Joseph
Antonio Mora, Jr. independently arrived in response to the request for
backup.  The officers determined that
Officers Seagler and Myers  would
complete the report and file charges, and Officers Giannavola and Mora would
transport appellant and Douglas to jail. 
Officers Seagler and Myers returned to the scene on Potomac.

Officer Mora arrested appellant for
traffic violations, arrested Douglas for criminal mischief, and took the
juveniles into custody for curfew violations. 
Officer Mora observed that appellant=s car was illegally
parked because it was not within eighteen inches of the curb.  He decided to impound and tow the car and
called a wrecker to the scene.

Before appellant=s car was towed,
Officer Mora conducted an inventory.  He
unlocked the car=s trunk with the key and found a closed
red backpack.  He opened the backpack and
found marijuana and what was later determined to be peyote.  Appellant indicated the backpack was his and
Officer Mora arrested him for possession of marijuana.








Appellant was initially charged with
misdemeanor possession of marijuana.  He
moved to suppress the evidence obtained through the inventory of his car and a
suppression hearing was conducted.  The
State dropped the misdemeanor charge in favor of proceeding on a felony charge
of possession of peyote. 

Appellant again moved to suppress the
evidence obtained through the inventory of his car.  Because the relevant facts had not changed,
the parties agreed to have the motion decided on the basis of the transcript
from the prior misdemeanor hearing.  The
trial court denied appellant=s motion to
suppress.  

ANALYSIS

In six issues, appellant contends the
trial court erred in denying his motion to suppress because (1) he should have
been given alternatives to having his car impounded, (2) the applicable written
guidelines of the Houston Police Department are unconstitutionally vague, (3)
the officers unconstitutionally acted in bad faith by impounding his car, and
(4) the search of his car was unconstitutional because it was not conducted
pursuant to any established inventory guidelines.

I.        Standard
of Review

We reverse a trial court=s ruling on a
motion to suppress only if it abused its discretion.[1]
Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).  The trial court is the sole judge of the
credibility of the witnesses and the weight to be given their testimony.  Id. 
We view the evidence in the light most favorable to the trial court=s ruling, and must
sustain the ruling if it is reasonably supported by the record and correct on
any theory of law applicable to the case.

 








II.       Absence
of a Warrant

The State first argues that it had no
burden of proving the legality of the search because appellant did not meet his
burden of proving the search was performed without a warrant.  The only direct indication that the search
was performed without a warrant was the misdemeanor hearing judge=s statement that, AIt=s a warrantless
arrest.  The State=s going to go
forward.@ 

When a defendant seeks to suppress
evidence on the basis that a search was performed in violation of the Fourth
Amendment, the initial burden is on the defendant to rebut the presumption of
proper police conduct.  Russell v.
State, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986).  A defendant must meet that burden by
demonstrating the search was performed without a warrant.  Id. 
Once the defendant rebuts this presumption, the burden of proof shifts
to the State to either produce evidence of a warrant or prove the
reasonableness of the search.  Id.
at 9B10. 








We have previously held that a defendant
must meet his burden by producing affirmative evidence showing there was no
warrant; circumstantial evidence will not suffice.  See, e.g., Telshow v. State,
964 S.W.2d 303, 307 (Tex. App.CHouston [14th
Dist.] 1998, no pet.); White v. State, 871 S.W.2d 833, 836B37 (Tex. App.CHouston [14th
Dist.] 1994, no pet.).[2]  In the case most factually similar to this
one, we held that the defendant did not meeet his burden even though the trial
court impliedly found he did so and the prosecutor stated during argument that
the arrest was warrantless.  See Highwarden
v. State, 846 S.W.2d 479, 481 & n.2 (Tex. App.CHouston [14th
Dist.] 1993), pet. dism=d as improvidently
granted, 871 S.W.2d 726 (Tex. Crim. App. 1994).  Under this line of authority, appellant would
not have met his burden even though the trial court impliedly found he did so
and the trial court stated the arrest was warrantless.  However, this line of authority is not
without criticism.  See Gulley
v. State, No. 14-00-00310-CR, 2001 WL 1103248, at *1B2 (Tex. App.CHouston [14th
Dist.] Sept. 20, 2001, pet. ref=d) (Murphy, J.,
dissenting)(not designated for publication); Sims v. State, 980 S.W.2d
538, 541 (Tex. App.CBeaumont 1998, no pet.) (Burgess, J.,
concurring) (AOnly the Houston courts have adopted this
rule that the absence of a warrant must be established by direct evidence.@).  In light of this criticism and the Court of
Criminal Appeals= recent decision in Bishop v. State,
85 S.W.3d 819 (Tex. Crim. App. 2002), we will revisit the issue.

In Russell, the key Court of
Criminal Appeals case on this issue, it appears the defendant met his burden
without producing affirmative evidence showing there was no warrant.  See Russell, 717 S.W.2d at 10B13.  The Court wrote, AFrom Officer
Graves= testimony it is
obvious that no warrant was obtained.@  Id. at 10.  However, at no point in the officer=s testimony did
the officer state the arrest was warrantless, nor was the officer asked whether
it was warrantless.[3]  Id. at 11B13.  Further, it appears the Court=s decision was
based on circumstantial evidence from its statement that the lack of a warrant
was obvious based on the testimony. 
See id. at 10; see also Sims, 980 S.W.2d at
541 (Burgess, J., concurring).  Thus, our
requirement that the showing be based on affirmative evidence appears to be
more stringent than the requirement of the Court of Criminal Appeals.








In Bishop, the Court of Criminal
Appeals reversed this court=s decision that
the defendant failed to meet her burden because she failed to produce
affirmative evidence showing there was no warrant.  Bishop, 85 S.W.3d at 822.  The appellant only claimed that the arrest
was warrantless in her unsworn motion to suppress; her affidavit contained no
such statement.  Bishop v. State,
No. 14-00-00792-CR, 2001 WL 893309, at *2 (Tex. App.CHouston [14th
Dist.] Aug. 9, 2001) (not designated for publication), rev=d, 85 S.W.3d
819.  Relying on Telshow, this
court held that she failed to produce any affirmative evidence because an
unsworn motion is not evidence.  Id.  The Court of Criminal Appeals reversed,
holding that the trial court should have considered the allegation in the
motion to suppress.  Bishop, 85
S.W.3d at 822.  The Bishop case is
not directly on point, because it turned on the issue of whether an unsworn
motion to suppress should be considered in addition to the affidavits when
determining whether the defendant had shown the arrest was without a
warrant.  See id.  However, it is an indication that a defendant
can meet the burden of showing there was no warrant with less than affirmative
evidence.

Based on Russell and Bishop,
we hold that a defendant can meet his burden of demonstrating that an arrest
was performed without a warrant with circumstantial evidence.  To the extent that Telshow and similar
cases hold to the contrary, they are overruled. 
See Telshow, 964 S.W.2d at 307; White v. State, 871
S.W.2d 833, 836 (Tex. App.CHouston [14th
Dist.] 1994, no pet.); Highwarden, 846 S.W.2d at 481 & n.2; Johnson
v. State, 834 S.W.2d 121, 123B24 (Tex. App.CHouston [14th
Dist.] 1992, pet. ref=d). 
We therefore turn to the record to determine if it demonstrates the
arrest was performed without a warrant.

To begin with, the misdemeanor hearing judge
stated that the case involved a warrantless arrest and she impliedly found so
when she placed the burden of proceeding on the State.  The State accepted this burden without
objection.  Although not evidence, this
is a rather significant indication that the search was performed without a
warrant.  When the judge has already
impliedly found that police searched a car without a warrant, requiring the
defendant to produce additional evidence that the search was performed without
a warrant would accomplish little other than setting a procedural trap for the
unwary.  See Allen v. State,
552 S.W.2d 843, 846 (Tex. Crim. App. 1977) (AThe law does not
require a useless thing to be done.@).








The evidence in the record also
demonstrates the search was performed without a warrant.  Officers Seagler and Myers pursued appellant
because they saw an occupant in the car appellant was driving throw a pumpkin
at a parked car.  Officer Seagler
testified that neither he nor Officer Myers noted the license plate of the car
until after appellant had been stopped and that he only Aquickly glanced@ at appellant=s driver=s license to make
sure it was valid.  He also testified
that appellant was not free to leave at that time, indicating that appellant
was already under arrest.  See Kunkel
v. State, 46 S.W.3d 328, 330 (Tex. App.CHouston [14 Dist.]
2001, pet. ref=d) (AAn arrest is
complete when a person's liberty of movement is restricted or restrained.@).  From this evidence it is obvious that the
arresting officers did not arrest appellant pursuant to a warrant.[4]  We therefore hold appellant met his burden of
showing the arrest was performed without a warrant and address his complaints.

III.      Alternatives
to Impoundment

In his first three issues, appellant
contends the trial court erred in denying his motion to suppress because he was
not given alternatives to having his car impounded.  The three specific alternatives appellant
argues he was not given were (1) leaving his car legally parked at the scene,
(2) releasing his car to one of the passengers, and (3) leaving the car at the
nearby home of one of the passengers.

To ensure the validity of its
impoundments, the Houston Police Department has established a written policy
for its officers to follow when the owner is taken into custody.  That policy provides the following:

Prisoners are responsible for the
disposition of their vehicles unless such vehicles are subject to seizure or
needed as evidence.  Prisoners will
choose one of the following alternatives for the disposition of their vehicles:

a.       Release
to Another Party.  The vehicle may be
released to a third person.  Officers
must ensure the third person has a valid driver=s license and insurance before
being allowed to operate the vehicle.

b.       Leave
Vehicle Parked.  Vehicles may be left
at the scene if they are legally parked. 
If the vehicle is to be left on private property, permission should be
obtained from the property=s owner or manager.

c.       Prisoner‑Requested
Tow.  The vehicle may be towed at the
prisoner=s expense.








Houston Police Department, General Order no. 600‑10, ' 7 (Nov. 19,
1999).  The first two alternatives are
also required by common law.  See,
e.g., Stephen v. State, 677 S.W.2d 42, 44 n.1 (Tex. Crim. App. 1984)
(stating the police should respect a prisoner=s wish to leave
his car with a companion who had a valid driver=s license); Josey
v. State, 981 S.W.2d 831, 842B43 (Tex. App.CHouston [14th
Dist.] 1998, pet. ref=d) (examining the availability of both
options); Smith v. State, 759 S.W.2d 163, 167 (Tex. App.CHouston [14th
Dist.] 1988, pet. ref=d) (holding that the prisoner should have
been allowed to choose whether to leave his car parked in a public parking
lot).  Appellant was thus entitled to
either of them regardless of police procedure. 
See Stephen, 677 S.W.2d at 44 n.1 (holding that a policy
that only allowed release to relatives was Amuch too narrow@).  The third alternative, a prisoner-requested
tow, was not argued to the attention of the trial court, so we will not
consider it here.  See Tex. R. App. P. 33.1(a). 

The policy states that a police‑authorized
tow is permissible when Athe prisoner is not present or is
medically incapable of or unwilling to select from [these] alternatives.@  General
Order no. 600‑10, ' 7.  The policy does not address a situation when
none of the alternatives are available, presumably because whenever a police‑authorized
tow is possible a prisoner‑requested tow will also be possible.  However, we hold that a police‑authorized
tow is also permissible when a prisoner is incapable, for other than medical
reasons, of selecting from these alternatives.








First, appellant argues he should have
been permitted to leave his car legally parked at the scene.  Two officers testified that the car was not
legally parked because it was more than eighteen inches from the curb.  Although appellant contends the car could
have been moved several inches closer to the curb and thus legally parked, the
police were not required to offer this option. 
See Josey v. State, 981 S.W.2d 831, 843 (Tex. App.CHouston [14th
Dist.] 1998, pet. ref=d). 
In Josey, the defendant=s car could have
been moved so that it was safely parked on the grass by the side of the road,
but at the time of the impoundment the officers did not know who owned the car
and thus could not determine if the owner would have preferred to leave the car
parked there as an alternative to impoundment. 
Id.  Similarly, the
officers here did not know who owned the car driven by appellant.  The evidence in the record indicates that the
car had been rented, but there is no evidence that the officers knew at the
time of impoundment that the car had been rented to appellant, or even whether
it was in fact rented to appellant. 
Therefore, there was no Aobjectively
demonstrable evidence that [the alternative], did, in fact, exist.@  Id. (quoting Mayberry v. State,
830 S.W.2d 176, 180 (Tex. App.CDallas 1992, pet
ref=d)).

Second, appellant argues he should have
been allowed to release the car to one of his passengers.  The two passengers other than appellant and
Douglas, who was under arrest for criminal mischief, were both juveniles.  Although there was conflicting testimony as
to whether appellant was pulled over after midnight or shortly before midnight,
the judge was to determine the weight to give conflicting testimony.  We cannot say that it was an abuse of
discretion for the trial court to determine that the impoundment occurred after
midnight and that the juvenile passengers were unable to take possession of the
car due to the midnight curfew. 
Additionally, there is again no evidence that the officers knew at the
time of impoundment that the car had been rented to appellant.[5]  Josey, 981 S.W.2d at 843.

Third, appellant argues that he should
have been allowed to leave the car at the nearby home of one of the
passengers.  However, parking the car at
a nearby home is neither an option under the police policy or the common law.  See General
Order no. 600‑10, ' 7; Mayberry v.
State, 830 S.W.2d 176, 180 (Tex. App.CDallas 1992, pet.
ref=d) (AIt was not
incumbent upon the officers to locate the occupant of the house to determine
whether appellant=s car could remain in the driveway.@).  Further, the police were not required to
allow either appellant or the passenger to move the car to the nearby home for
the same reasons the first two alternatives were not available.

Because none of the alternatives argued at
the trial court by appellant were available, the impoundment of his car was
permissible.  We overrule appellant=s first three
issues.








IV.      Vagueness

In his fourth issue, appellant contends
that the police guideline that A[v]ehicles may be
left at the scene if they are legally parked@ is impermissibly
vague.  Appellant raises the question of
whether this guideline requires that the car already be legally parked at the
time of the impoundment or whether the guideline permits a car be moved so that
it is legally parked.  However, we do not
need to resolve this question.

The common law already recognizes the
possibility that a car may be moved in order to be left legally parked if it is
reasonable to do so.  See Josey,
981 S.W.2d at 843.  In Josey, the
impoundment was upheld because the officers were unaware of the owner of the
vehicle, not because it would have been unreasonable to move the car from the
road to the grass next to the road.  Id.  Because the common law recognizes that a car
may be moved in order to be left legally parked, it is of no consequence
whether the police guideline purports to limit that right.  See Benavides v. State, 600
S.W.2d 809, 812  (Tex. Crim. App. 1980) (A[T]he Fourth
Amendment protection against seizures cannot be whittled away by a police
regulation.@).

Although we agree with appellant that a
car may be moved in order to be left legally parked if it is reasonable to do
so, for the reason stated in section III, supra, that alternative was
not available to appellant.  We overrule
appellant=s fourth issue.

V.      Bad Faith








In his fifth
issue, appellant contends the officers impounded his car in bad faith.[6]  Appellant alleges the arresting officers
demonstrated bad behavior in (1) directing appellant to stop the car, (2)
instructing appellant to move the car to the opposite side of the street, (3)
blocking the car and forcing appellant to stop when he was moving it to the
opposite side of the street, (4) criticizing appellant=s parking as not
being Atechnically legal,@ (5) failing to
present appellant with the alternatives provided by the department policy, (6)
ignoring the alternative of leaving the car at the passenger=s house, (7)
refusing to allow the car to be moved in order to be legally parked, (8)
holding the passengers during the investigation and thereby denying appellant
the opportunity to release the car to one of them, and (9) towing the car to
the scene of the incident.

As we have already held, however, the
alternatives of releasing the car to a passenger and allowing the car to be
left legally parked were unavailable. 
The officers could not have acted in bad faith in failing to offer
unavailable options.  Although there is
some evidence the officers did not offer the alternatives because they were
unaware of the policy, such ignorance would not rise to the level of bad
faith.  We overrule appellant=s fifth issue.

VI.      Guidelines

In his sixth issue, appellant contends the
inventory search of the car=s trunk and the
backpack were not conducted pursuant to any established department
guidelines.  The department policy
provides, 

Whenever a
prisoner authorizes a nonconsent tow, the officer will personally conduct an
inventory of the vehicle and will complete the Towed Vehicle Disposition
Record form.  A detailed inventory
list will be written on the form.  Officers
must be specific in identifying inventoried items.  General terms such as miscellaneous
property will not be used.   

General Order no. 600‑10,
' 7.  The policy does not specifically provide
whether officers are authorized to search locked trunks or closed backpacks.

Either standardized criteria or
established routine must regulate the opening of closed containers during an
inventory search.  Florida v. Wells,
495 U.S. 1, 4 (1990); Moberg v. State, 810 S.W.2d 190, 195 (Tex. Crim.
App. 1991) (quoting Wells).   The
criteria or routine regulating inventory searches must be designed to produce
an inventory and not serve as Aa ruse for a
general rummaging in order to discover incriminating evidence.@  Wells, 495 U.S. at 4; see also Moberg,
810 S.W.2d at 196.








The officer performing the inventory
testified that, although there was no written guideline, he was trained to
inventory any container he had access to, including a locked trunk if he has
the key for it.[7]  Thus, although there is apparently no written
policy governing inventory searches of closed containers, there is evidence of
an established routine governing the opening of closed containers.  The trial court therefore did not abuse its
discretion in finding that the inventory search was permissible.

Further, there is no evidence that the
search was a ruse to discover incriminating evidence; searching the locked
trunk and backpack furthered the purpose of allowing inventory searches.  A[I]nventory
procedures serve to protect an owner=s property while
it is in the custody of the police, to insure against claims of lost, stolen,
or vandalized property, and to guard the police from danger.@  Colorado v. Bertine, 479 U.S. 367, 372
(1987).  The opening and inventory of
easily-accessible containers serves both to protect the owner=s property and to
insure against false claims.  See Illinois
v. Lafayette, 462 U.S. 640, 647B48 (1983) (holding
the opening and inventory of a shoulder bag was reasonable despite the possible
alternative of securing the bag as a whole). 
We overrule appellant=s sixth issue.

We affirm the
judgment of the trial court.                                               

 

 

/s/      Wanda McKee Fowler

Justice

Judgment
rendered and En Banc Opinion filed September 28, 2004.

En Banc Court consists of Chief
Justice Hedges, Justices Yates, Anderson, Hudson, Fowler, Frost, Seymore and
Guzman.  Justice Edelman concurring in
result only.

 

Publish
C Tex. R. App. P. 47.2(b).











[1]  Appellant
argued that de novo review would be appropriate because the trial court ruled
based on the transcript of the misdemeanor hearing, and the trial court was
therefore in no better position than we are to judge the credibility of the
witnesses.  Appellant relied on a case in
which de novo review was held to be appropriate for a similar reason when the
hearing was held based on affidavits.  See
State v. West, 20 S.W.3d 867, 870B71 (Tex.
App.CDallas 2000, pet. ref=d); see
also Guzman v. State, 955 S.W.2d 85, 87B89 (Tex. Crim. App. 1997).  The Court of Criminal Appeals has clarified
its position in Guzman, however, and held that a deferential standard of
review is appropriate when the trial court makes its decision based solely on
affidavits.  Manzi v. State, 88
S.W.3d 240, 243B44 (Tex. Crim. App. 2002).  In light of this ruling we will apply a
deferential standard of review.





[2]  It appears
that we relaxed this requirement in at least one recent opinion.  See McGee v. State, 23 S.W.3d
156, 162 (Tex. App.CHouston [14th Dist.] 2000), rev=d on other grounds, 105 S.W.3d 609 (Tex. Crim. App. 2003) (A[I]t is
clear from the record that appellant=s arrest
was warrantless.@).  The McGee
case dealt with the issue only in passing, however, and did not detail what
evidence demonstrated the arrest was warrantless.  See id.  Nor did the McGee case discuss our
holdings in cases such as Telshow; it relied solely on the Court of
Criminal Appeals= opinion in Russell.  See id. at 161.





[3]  The Court
states that the appendix contains A[t]he
only testimony concerning the return of appellant to the police station.@  Russell,
717 S.W.2d at 9 n.3.  Thus, while the
appendix does not contain the full testimony of the officer, it apparently
contains all of the evidence relevant to whether the arrest was warrantless.





[4]  We also note
that the question is only whether the officers arrested appellant pursuant to a
warrant, not whether there were any outstanding warrants for appellant.  See Johnson v. State, 834
S.W.2d 121, 124 n.3 (Tex. App.CHouston [1st Dist.] 1992, pet. ref=d).





[5]  Nor is there
any evidence that the rental agreement would have permitted the car being
released to one of the juvenile passengers.





[6]  The authority
cited by appellant states that an inventory search, not an impoundment, may be
invalidated by bad faith.  See Colorado
v. Bertine, 479 U.S. 367, 372B73
(1987); Trujillo v. State, 952 S.W.2d 879 (Tex. App.CDallas 1997, no pet.). 
Because the evidence does not indicate that the officers acted in bad
faith, we do not need to address the issue of whether an impoundment may also
be invalidated by bad faith.





[7]  The officer=s testimony was,

Q:         Do you have any
guidelines for the trunk?

A:         Yes.  If the ignition key goes with the vehicle, if
it opens the trunk, I inventory that. 
Any access I inventory.

Q:         Excuse meC

Court:   Hold on.  I get to talk.  And you don=t get
the interrupt me.  That=s a guideline?

A:         That=s how I was trained.