Ulysses SARGENT, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–99–01388–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 16, 2001.

Angela L. Cameron, Houston, TX, for appellants.

Bridget Holloway, Houston, TX, for appellees.

Panel consists of Justices YATES, FOWLER, and SEARS.\*

## OPINION

SEARS, Justice (Assigned).

This is an appeal from a motion to suppress. An undercover officer observed appellant engage in suspicious conduct under circumstances which led him to believe appellant was transacting drug business. Appellant was detained and, during a pat-down, a bag of heroin fell from appellant to the ground. Appellant was charged with possession with intent to deliver a controlled substance. After the trial court denied his motion to suppress, appellant pled guilty, and the court sentenced him to an agreed punishment of 25 years' confinement. In his sole issue, appellant argues the trial court abused its discretion in denying his motion to suppress. We affirm.

### Background

At the time of the suppression hearing, Officer Robert Muller was a nine-year veteran of the Houston Police Department

---

\* Senior Justice Ross A. Sears sitting by assign- ment.

("HPD") and had spent the last three years in the narcotics division. Muller came into contact with appellant while he was conducting undercover surveillance at a strip center in southeast Houston, which Muller stated was known as a place for "upper level drug dealers." After 30 to 45 minutes, Muller noticed a blue Nissan Altima with three occupants pull up to a pay phone. Muller had observed that particular pay phone over two years and knew it was used by drug dealers. Appellant, the front seat passenger, got out and made several phone calls. Muller believed appellant to be making pages. Each call appellant made would last momentarily, then he would wait "a minute or two," a call would come in, he would talk for two or three minutes, then hang up. Appellant repeated this process several times. Muller testified that, based on his training and experience as a narcotics officer, he believed appellant was transacting drug business.

Appellant got back in the Nissan, which pulled out, with Muller following in his unmarked vehicle. The Nissan next drove into a convenience store parking lot. There, appellant met with a person in a white four-door vehicle for about five minutes. However, Muller could not tell what the two were doing from his vantage point across the street. Muller then followed the Nissan to a second convenience store where appellant went to a pay phone and made another call. Another vehicle arrived. The driver got out, and he and appellant did "something there on the floorboard" of the Nissan and were bending down "as if they didn't want anybody else to see them." Muller testified that, based on his experience, he believed the two had engaged in a drug transaction. The Nissan left and proceeded to a service station. There, appellant made and received several calls in the same manner described above. The Nissan exited the service station, and Muller followed while appellant traveled about 40 to 45 miles per hour through two school zones.[1] Muller also observed that, while other vehicles slowed down, the Nissan weaved in and out to beat the traffic. Muller then radioed for a marked patrol car to pull the Nissan over for illegal lane changes and speeding through a school zone. Muller also told the uniformed officer he wanted him to get the occupants' identification.

Meanwhile, the Nissan pulled into a trailer park where Muller had previously made arrests for possession of a controlled substance. The Nissan pulled in front of trailer # 10. Muller testified that he had received information from other narcotics officers and an informant that occupants of that trailer had sold heroin from there. A woman exited the trailer and went to the passenger side of the Nissan where she talked with appellant for about five minutes. Muller was too far away to observe any of the details of their meeting.

After the Nissan left the trailer park, two HPD patrol cars pulled it over. Muller walked over to the scene where one of the uniformed patrolmen, Officer William Allen, was patting down appellant. Muller testified that, as he approached, Allen pointed to a ziplock baggie on the ground and said that appellant "just pitched that." Muller picked up the baggie which contained brown powder. Based on his experience, Muller believed it to be heroin. Muller had appellant cuffed, then he searched appellant's back pocket and recovered several small packets of heroin.

On cross-examination, Muller admitted that he did not directly observe a felony, nor did he witness a hand-to-hand transfer

---

**1.** Appellant called a witness who testified that the day of the arrest was the Monday after Easter, a school holiday.

of narcotics or hear any of appellant's conversations. Muller also stated that the dealers who frequented the strip center where he began his surveillance were generally Dominican or Colombian and that appellant was neither. Appellant also asked "All you had was some hunch at this point [after seeing the car weave though traffic] that maybe something was going on?" to which Muller replied "Yes." However, Muller also asserted on cross that he believed he had probable cause after observing the Nissan at the second location because he felt "pretty sure" a drug transaction was taking place on the floorboard of the vehicle.

Next, Officer Allen testified. Allen stated that after he pulled over the Nissan, he went to the passenger side and asked appellant for identification, which appellant said he did not have. Allen had appellant step out and, while patting him down for weapons, Allen saw a small clear bag fall from appellant to the ground. Allen testified that he told Muller that the object had fallen and that he did not recall stating that appellant had "pitched" it. On cross-examination, Allen stated he had appellant exit the vehicle because he did not have identification and he wanted to confirm appellant was not a fugitive. Allen admitted that appellant did not try to resist, make any threats, or furtive gestures. Allen said he performed the pat-down on appellant to "make sure he didn't have any weapons on him" and because it was police procedure.

The court denied the motion to suppress and appellant now challenges that ruling. In a single issue, appellant argues that the court erred in denying his motion to suppress because the facts observed by the officers do not rise to the level of reason-able suspicion that criminal activity may be afoot or that appellant might be armed and dangerous; therefore, the stop of appellant's vehicle was illegal. Accordingly, he contends that the fruits of the subsequent pat-down, as well as of the search of appellant's pockets, were obtained in violation of Article I, Section 9 of the Texas Constitution, and thus should be suppressed.

## Standard of Review

■■■■ In reviewing a trial court's ruling on a motion to suppress evidence, we apply a bifurcated standard of review in which we give almost total deference to a trial court's determination of historical facts and review de novo the court's application of the law of search and seizure. *Guzman v. State,* 955 S.W.2d 85, 88–89 (Tex.Crim. App.1997). Because the trial court did not make explicit findings of historical fact, we review the evidence in a light most favorable to the trial court's ruling. *See State v. Ballard,* 987 S.W.2d 889 (Tex.Crim.App. 1999). In other words, we assume that the trial court made implicit findings of fact supported in the record that buttress its conclusion. The trial court is the sole trier of fact and judge of the weight and credibility of the evidence. *Ballard,* 987 S.W.2d at 891. Absent an abuse of discretion, a trial court's ruling on a motion to suppress will not be set aside. *Oles v. State,* 993 S.W.2d 103, 106 (Tex.Crim.App. 1999).

## Discussion

### The Stop

■■■■ We first address appellant's contention that the stop of the vehicle in which he was riding was illegal under the Texas Constitution.[2] Police officers may

---

2. Appellant does not claim his Fourth Amendment rights were violated. However, we interpret his rights under Article I, Section 9 consistently with the interpretation of his Fourth Amendment rights by the U.S. Supreme Court and the Texas Court of Criminal Appeals. *See Tate v. State,* 939 S.W.2d 738,

stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio,* 392 U.S. 1, 22–26, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Garza v. State,* 771 S.W.2d 549, 558 (Tex.Crim.App.1989). The information possessed by the detaining officer can derive from the collective knowledge of other officers. *Woodward v. State,* 668 S.W.2d 337, 344 (Tex.Crim.App.1982). To justify an investigative detention, the officer must have a reasonable suspicion that "some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime." *Terry,* 392 U.S. at 21–22, 88 S.Ct. 1868. The officer must have specific articulable facts which, in light of his experience and personal knowledge, together with inferences from those facts, would reasonably warrant the intrusion on the freedom of the person detained for investigation. *Id.* at 30, 88 S.Ct. 1868; *Woods v. State,* 956 S.W.2d 33, 38 (Tex. Crim.App.1997). The reasonableness of a temporary stop turns on the "totality of the circumstances" in each case. *Illinois v. Gates,* 462 U.S. 213, 230–31, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The determination of reasonable suspicion is a factual one and is made and reviewed by considering the totality of the circumstances at the time of the stop. *Loesch v. State,* 958 S.W.2d 830, 832 (Tex.Crim.App.1997) (noting that "facts that do not show reasonable suspicion in isolation may do so when combined with other facts.").

■ Appellant contends he should not have been detained because it is not out of the ordinary for a person to make calls from a pay phone, especially in a poor area of town where many people do not have home phones. Such an assertion begs the issue because it improperly isolates each

discrete act and fails to recognize the totality of the officers' observations. *Id.* Also implicit in appellant's claim is the now-disapproved proposition that reasonable suspicion can not be established by conduct which is as consistent with innocent activity as with criminal activity. *See Woods v. State,* 956 S.W.2d 33 (Tex.Crim. App.1997). As pointed out in *Woods,* innocent behavior will frequently provide the basis for a showing of reasonable suspicion, and in making that determination, the relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular types of noncriminal acts. *Id.* at 34–35. Further, objective facts may be meaningless to the untrained; but when used by trained law enforcement officers, they can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person. *Id.* at 37–38. Under that standard, if circumstances are "consistent with criminal activity," they permit—even demand—an investigation. The public rightfully expects a police officer to inquire into such circumstances in the proper discharge of the officer's duties. *Id.* at 37.

We note that the circumstances justifying a stop in the seminal case of *Terry,* in essence, bore similarities cited by Muller in this case. As outlined in *Woods,* the officer in *Terry*

> observed two men standing about three hundred feet away from him. One of the men left the other one and walked south past some stores. He paused for a moment and looked in a store window, then walked on a short distance, turned around and walked back toward the corner, pausing once again to look in the same store window. He rejoined his companion at the corner, and the two conferred briefly. The second man went

through the same series of motions. As described, there is nothing illegal about the conduct of these two men. Window shopping is neither a crime, nor is it ordinarily suspicious behavior. But, this particular activity was repeated by the two men approximately one dozen times over a twelve minute period. Also, at one point, while the two men were standing together on the corner, a third man approached them and engaged them briefly in conversation. After the third man left, the two resumed their pacing and peering.

*Woods,* 956 S.W.2d at 38 (citations omitted). Of course, the Court in *Terry* found that these facts, viewed in light of the officer's years of experience, gave rise to enough suspicion to justify a detention. *Id.*

■ In this case, like *Terry,* Muller witnessed acts seemingly innocent when viewed in isolation, but highly suspicious when taken together. In sum, Muller, an experienced narcotics officer, testified he observed numerous acts and circumstances which, taken together, were suspicious because they indicated to him that appellant was engaging in drug transactions. As such, these observation go beyond *Terry* where no crime had yet occurred, because Muller witnessed what he believed was a crime—a drug transaction—in progress. One or two phone calls from a pay phone is one thing, but, as outlined above, some ten calls made by appellant in an area known for drug trafficking, placed from several different locations, punctuated by concealed transactions, a visit to a trailer where occupants were known for the sale of heroin, and failing to provide identification to an officer, are quite another. Therefore, we find that Muller's observations gave rise to enough suspicion for him to reasonably believe that some activity out of the ordinary was occurring or had occurred, that there was some suggestion to connect appellant with the unusual ac-

tivity, and that there was some indication that the activity was related to a crime. *Terry,* 392 U.S. at 21–22.

### The Pat–Down

■ Appellant next argues that even assuming his detention were legal, the subsequent pat-down for weapons, which may have revealed the heroin, was illegal. Appellant cites *Worthey v. State,* 805 S.W.2d 435 (Tex.Crim.App.1991), which provides the following non-exclusive list of factors which may be used in determining whether a frisk or search is justified: (1) flight; (2) furtive gestures and sudden movements toward a pocket where a weapon might be concealed; (3) threats and attempts to resist detention; (4) committing or about to commit a criminal offense; and (5) intoxication. *Id.* at 438–39 (citing *Lippert v. State,* 664 S.W.2d 712, 721 (Tex.Crim.App. 1984)). Appellant points to both officers' testimony that he did not resist detention, make furtive movements, or do any other acts that indicated he might be aggressive. Therefore, he argues, the officers did not have an objectively reasonable belief that appellant might be armed and dangerous. We disagree.

As stated in *Worthey,* the list is nonexclusive. Even though appellant did not exhibit any overt signs of hostility, resistance, or intoxication, there were other material factors present which gave rise to a reasonable belief that appellant might be armed and dangerous. First, we note that one of the *Worthey* factors is present in that Muller detained appellant because he reasonably believed appellant had just committed drug crimes and, inferentially, was continuing to commit them by holding narcotics with intent to distribute. Additionally, the court of criminal appeals has recently recognized that a police officer's reasonable belief that a suspect is armed and dangerous may be predicated on the

nature of the suspected criminal activity. *Carmouche v. State,* 10 S.W.3d 323, 330 (Tex.Crim.App.2000) (citing *Terry,* 392 U.S. at 27–28, 88 S.Ct. 1868). As here, *Carmouche* involved an appeal of a motion to suppress in a drug case. The court of criminal appeals held that, based on the officers' limited knowledge of that appellant's suspected activities, the officers justifiably approached appellant with caution, and it was not unreasonable for them to conduct a limited search for weapons in those circumstances. Citing numerous federal cases, the court stated that since weapons and violence are frequently associated with drug transactions, the officers reasonably believed that the individual with whom they were dealing was armed and dangerous. *Id.* (citing *United States v. Trullo,* 809 F.2d 108, 113 (1st Cir.1987) (determining that frisk of narcotics suspect was justified because "concealed weapons were part and parcel for the drug trade."); *United States v. Post,* 607 F.2d 847, 851 (9th Cir.1979) ("It is not unreasonable to suspect a dealer in narcotics might be armed.")). Thus, based on the officer's articulable suspicion that Carmouche was trafficking in cocaine, the court of criminal appeals held that the officer was constitu-

tionally justified in patting him down for weapons.

██ Here, in addition to suspecting appellant was a drug dealer, the encounter took place on the roadside. Roadside encounters between police and suspects are especially hazardous. *Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). Appellant also failed to identify himself or produce identification to police, leaving the officers less secure in their safety because they had no way to know whether appellant was a fugitive. In light of these circumstances, we find that the officers pointed to specific and articulable facts which, taken together with rational inferences from those facts and the officers' experience, reasonably warranted patting-down appellant for weapons.[3] *See Terry,* 392 U.S. at 27, 88 S.Ct. 1868.[4]

Once appellant was revealed to have been in possession of heroin, the officers were permitted to arrest and search appellant at the scene. *See* Tex.Code Crim. Proc. Ann. art. 14.01(b) (officer may arrest an offender without a warrant for any offense committed in his presence or within his view); *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d

---

3. We also note that the record contained sufficient evidence to support the trial court's implied finding that appellant abandoned the heroin. The officers' testimony may have appeared in conflict about whether Officer Allen told Officer Muller that appellant "pitched" the heroin. However, Allen was rather equivocal about what he said to Muller because when asked whether he told Muller appellant had pitched the heroin, Allen answered, "not that I recall." Thus, the trial court could have resolved any inconsistency in the testimony by finding that Muller's memory of the events was more reliable. Additionally, because Allen did not put his hand inside appellant's pockets and only saw the heroin fall out of his peripheral vision, the record supported an implied finding that the appellant did "pitch" the heroin, rather than it somehow

being dislodged by the pat-down of appellant's outer clothing.

4. Appellant also challenges the pat-down because Officer Allen testified he did it as part of his routine. As already stated, though, the determination of whether the arresting officer's actions are justified are based on the collective knowledge of officers. *Woodward v. State,* 668 S.W.2d 337, 344 (Tex.Crim.App. 1982). Additionally, we note that Allen's subjective state of mind is not determinative; rather, we look at the state of facts from an objective standard. *See O'Hara v. State,* 27 S.W.3d 548, 551 (Tex.Crim.App.2000) (holding that the issue is not whether officer subjectively feared suspect but whether a reasonably prudent person would justifiably believe that his safety or that of others was in danger).

685 (1969); *McGee v. State,* 23 S.W.3d 156, 171 (Tex.App.—Houston [14th Dist.] 2000, pet. ref'd) (police are authorized to search all persons they lawfully arrest). Thus, the trial court did not abuse its discretion in denying the motion to suppress the drugs possessed by appellant. We overrule appellant's issue.

The judgment of the trial court is affirmed.