# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00034-CR

### Daniel Lee Henderson, Appellant

### v.

### The State of Texas, Appellee

### FROM COUNTY COURT AT LAW NO. 1 OF COMAL COUNTY
### NO. 2007CR1016, HONORABLE RANDAL C. GRAY, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury convicted Daniel Lee Henderson of possession of less than two ounces of marijuana, a class B misdemeanor. *See* Tex. Health & Safety Code Ann. § 481.121(b)(1) (West 2003). The trial court assessed punishment at 120 days' confinement, probated to twelve months' community supervision with fifteen days' confinement as a condition of his community supervision, and a $500 fine. On appeal, Henderson argues that the trial court erred in refusing to suppress (1) evidence found in a search of his person in violation of the Fourth Amendment, *see* U.S. Const. amend. IV, and (2) an incriminating statement he made before receiving his *Miranda* warnings.[1]

### BACKGROUND

At approximately 10:00 p.m. on October 2, 2006, Henderson was pulled over for speeding on Interstate Highway 35 in Comal County by Texas Department of Public Safety officers

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Steven Tippett and Vaughn Pack. Tippett testified at the suppression hearing that when he approached Henderson's vehicle, he detected a very strong odor of burned marijuana coming from inside the vehicle. After asking Henderson to step out of the vehicle, Tippett asked Henderson if he and his female passenger had been smoking marijuana. Henderson responded that they had not.[2]

Tippett testified that, due to the strong odor of marijuana coming from the vehicle and from Henderson's breath as he spoke to him, he decided to search the vehicle. Tippett then informed Henderson that before searching the vehicle, he was going to pat Henderson down to determine whether he had any weapons. At the suppression hearing, Tippett stated, "So for officer safety—he's a grown man, I'm going to pat him down for my safety." During this pat-down, Tippett discovered a box of "Zig-Zag" rolling papers in Henderson's pocket. Based on this discovery, Pack handcuffed Henderson, but stated to him that he was not under arrest at that time. Pack then asked the female passenger to get out of the vehicle, handcuffed her, and began searching the vehicle.

Pack testified that he and Tippett took extra caution during the traffic stop because "[i]t's a nighttime shift, IH-35 is a known drug corridor. We make lots of felony arrests on 35. When we ran the tag on the plate, it came back to a rental car also and just for officer safety reasons." Pack further testified that it is not unusual for an individual in possession of drugs to also be carrying a weapon and that, in his experience with drug offenders, "a lot of them are violent."

While searching the vehicle, Pack found a burned marijuana cigarette on the front passenger seat with pink lipstick on it that, according to Pack, matched the lipstick that the passenger was wearing. Pack also found another burned marijuana cigarette, without lipstick on it, in the cup

---

[2] These facts are reflected in the patrol car video of the traffic stop, which was introduced into evidence and viewed by the trial court during the pre-trial hearing on Henderson's motion to suppress.

holder between the front seats of the vehicle and a bag of marijuana on the front passenger floorboard. When Pack discovered the bag of marijuana in the vehicle, Tippett asked Henderson, "Whose weed is it?" The patrol car video reflects that Tippett then said, "It's going to be hers because it was sitting right next to her," and Henderson responded, "No, it's mine." Pack then pointed out to Henderson that the marijuana cigarette he was holding had pink lipstick on it, indicating that it must have belonged to the passenger instead, but Henderson repeated, "It's my joint, it's my joint, it ain't hers. It's my joint."

After Pack found cocaine in the passenger's purse, Tippett made the decision to arrest her for possession of the cocaine and merely issue Henderson a citation for possession of drug paraphernalia. *See* Tex. Health & Safety Code Ann. § 481.125(a) (West 2003). The video reflects that Tippett began to explain this to Henderson, but was interrupted when Pack discovered a plastic bag of Xanax pills in the vehicle. When Henderson failed to produce a prescription for the pills, Tippett placed him under arrest as well.[3]

Prior to trial, Henderson filed a motion to dismiss, seeking to suppress certain portions of the patrol car video, including statements he made prior to receiving his *Miranda* warnings, hearsay statements made by the passenger, and certain statements by the police officers regarding Henderson's criminal history. Henderson also sought to suppress the rolling papers on the ground that Tippett was not justified in performing a protective frisk for weapons. After a hearing, during which both officers testified and the trial court reviewed the patrol car video, the trial court

---

[3] While Henderson was initially charged with possession of a controlled substance in relation to the Xanax pills, that charge was later dismissed when Henderson produced his valid prescription.

3

granted the motion to suppress in part, suppressing certain statements by the passenger and police officers, and denied the motion in part, refusing to suppress the rolling papers or Henderson's statements prior to receiving *Miranda* warnings.

The case proceeded to trial and the jury found Henderson guilty of possession of less than two ounces of marijuana. The trial court assessed punishment at 120 days' confinement, probated to twelve months' community supervision with fifteen days' confinement as a condition of his community supervision, and a $500 fine.

In two issues on appeal, Henderson argues that the trial court erred in refusing to suppress (1) the rolling papers found during Tippett's protective frisk and (2) Henderson's statements in response to Tippett's question, "Whose weed is it?" prior to receiving his Miranda warnings.

## STANDARD OF REVIEW

The appropriate standard of review for a suppression ruling is a bifurcated review, giving almost total deference to the trial court's findings of fact, but conducting a de novo review of its application of law to those facts. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (citing *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000)); *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1999). We review de novo "mixed questions of law and fact" that do not turn on credibility and demeanor. *Guzman*, 955 S.W.2d at 89. Finally, in reviewing a trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

**DISCUSSION**

*Evidence Seized During Protective Frisk*

Henderson does not argue that his initial detention was unlawful. *See Taylor v. State*, 20 S.W.3d 51, 56 (Tex. App.—Texarkana 2000, pet. ref'd) (holding that officer may stop and detain motorist to investigate traffic violation and that "odor of marihuana alone provides reasonable suspicion of criminal activity to justify a continued detention"). He does contend, however, that Tippett was not justified in frisking him for weapons and therefore that the rolling papers discovered during that search should have been suppressed.

Once a suspect has been lawfully detained, an officer may conduct a limited search for weapons, or "protective frisk," where it is reasonably warranted for his safety and the safety of others, even in the absence of probable cause. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968), *see also Balentine v. State*, 71 S.W.3d 763, 769 (Tex. Crim. App. 2002). Such a frisk will be justified only when specific and articulable facts could reasonably lead to the conclusion that the suspect might possess a weapon. *See Carmouche*, 10 S.W.3d at 329. "The officer need not be absolutely certain that an individual is armed; the issue is whether a reasonably prudent person would justifiably believe that he or others were in danger." *Balentine*, 71 S.W.3d at 769.

At the suppression hearing, Tippett testified that he performed a protective frisk on Henderson "for officer safety since he's standing outside the vehicle—he's a grown man, I'm going to pat him down for my safety." Furthermore, Pack testified that he and Tippett used extra caution during the traffic stop due to the time of night, the fact that Henderson was driving a rental car, the location on IH-35—a "known drug corridor," and the fact that it is not unusual for drug offenders

5

to carry weapons. The court of criminal appeals has held that it is objectively reasonable to perform a protective frisk for weapons in relation to a suspicion of drug activity. *See Griffin v. State*, 215 S.W.3d 403, 409 (Tex. Crim. App. 2006) ("[I]t is objectively reasonable for a police officer to believe that persons involved in the drug business are armed and dangerous."); *Carmouche*, 10 S.W.3d at 330; *Wilson v. State*, 132 S.W.3d 695, 698 (Tex. App.—Amarillo 2004, pet. ref'd) ("[E]ncountering one who is reasonably suspected of engaging in drug activity can justify a brief and minimally intrusive frisk of his person."). The court of criminal appeals has also noted "that 'roadside encounters between police and suspects are especially hazardous,'" a factor which may be taken into account when determining whether a protective frisk was justified. *Carmouche*, 10 S.W.3d at 330 (quoting *Michigan v. Long*, 463 U.S. 1032, 1049 (1983)); *see also Sargent v. State*, 56 S.W.3d 720, 725-26 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (holding that suspicion of drug activity, combined with fact that it was roadside encounter, was sufficient to justify protective frisk).

Henderson points to the fact that Tippett testified that he always performs a protective frisk before searching a suspect's vehicle and that he did not have any individualized suspicion that Henderson was armed and dangerous to support his contention that the protective frisk was not justified. However, because the determination of whether a reasonably prudent person would justifiably believe that he was in danger is an objective standard, an officer's subjective beliefs are not dispositive. *Griffin*, 215 S.W.3d at 409; *see also Tucker v. State*, 135 S.W.3d 920, 922 (Tex. App.—Amarillo 2004, no pet.) ("[S]ince the test is founded upon what the proverbial reasonable officer would have thought, the subjective beliefs of the actual officer performing the

6

search are not determinative."). Therefore, viewing the evidence in the light most favorable to the trial court's ruling, we hold that the circumstances were sufficient to warrant a reasonably prudent officer to conclude that a protective frisk was necessary for officer safety.

Henderson contends, in the alternative, that Tippett exceeded the scope of the permissible protective frisk by removing the rolling papers from his pocket. An officer may lawfully seize contraband discovered during a protective frisk if its "contour or mass makes its identity immediately apparent." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993); *see also Baldwin v. State*, 278 S.W.3d 367, 371, 372 n.14 (Tex. Crim. App. 2009) (describing "plain feel" doctrine created in *Dickerson* and stating that officer may not "manipulate the unseen item to determine its identity as contraband"). Tippett testified at the suppression hearing that he could not immediately identify the object he felt in Henderson's pocket and that he had to manipulate the object in order to determine what it was. Therefore, Tippett was not justified in seizing the box of rolling papers under the "plain feel" doctrine.

However, the scope of a protective frisk includes that which is necessary to discover weapons that could reasonably harm the police officers or others, and an officer who feels a possible weapon during a protective frisk does not exceed the scope of the search by reaching into a subject's pocket "[i]n order to ascertain whether the object [i]s in fact a weapon." *Balentine*, 71 S.W.3d at 770. At the suppression hearing, Tippett described the object he felt in Henderson's pocket as being square and flat, "kind of like a box cutter." Tippett further stated that even after manipulating the object, "I still didn't know it wasn't a weapon." In ruling on the motion to suppress, the trial court stated, "Tippett testified that he felt like the shape that he felt was possibly a box cutter and based

7

upon that, it was appropriate for him to go ahead [and] identify what that item was." Based on the circumstances, and applying the required deference to the trial court's findings of fact, we hold that Tippett did not exceed the scope of his protective frisk by removing the box of rolling papers from Henderson's pocket in order to confirm that the object was not a weapon. Henderson's first issue on appeal is overruled.

*Pre-Miranda Statements*

In Henderson's second issue on appeal, he argues that the trial court erred in refusing to suppress his response to Tippett's question, "Whose weed is it?" because he had not yet been read his *Miranda* rights.

A defendant's statements made during a "custodial interrogation" must be suppressed if the defendant was not read his *Miranda* rights prior to giving the statements. *See Williams v. State*, 270 S.W.3d 112, 136 (Tex. Crim. App. 2008); *see also* Tex. Code Crim. Proc. Ann. art. 38.22 (West 2005). A custodial interrogation occurs when a defendant is in custody and is exposed to words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response. *Roquemore v. State*, 60 S.W.3d 862, 868 (Tex. Crim. App. 2001).

It is undisputed that Henderson had not yet been read his *Miranda* rights at the time that he stated, "No, it's mine," in response to Tippett's question, "Whose weed is it?" Further, there is no question that asking, "Whose weed is it?" is reasonably likely to elicit an incriminating response. Therefore, the question of whether Henderson's answer should have been suppressed turns on whether he was in custody at the time the statement was made.

"A person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996). When Henderson made the statement in question, he was standing outside his vehicle in handcuffs, but had been expressly informed that he was not under arrest. "[T]he placing of handcuffs on a defendant does not, in and of itself, automatically mean he is in custody." *Turner v. State*, 252 S.W.3d 571, 580 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (citing *Balentine*, 71 S.W.3d at 771; *Rhodes v. State*, 945 S.W.2d 115, 117-18 (Tex. Crim. App. 1997)). In *Shepperd v. State*, 271 S.W.3d 281 (Tex. Crim. App. 2008), the court of criminal appeals held that where an officer handcuffed the appellant for the amount of time necessary to perform a "sweep" of his trailer, informed the appellant he was handcuffing him for that purpose, removed the handcuffs when he was done, and told the appellant that he was not under arrest, the appellant was not in custody for *Miranda* purposes. 271 S.W.3d at 291. The present case is similar in that Pack handcuffed Henderson for the time necessary to search his vehicle, and while doing so, clearly stated, "You are not under arrest at this time." While the present case differs from *Shepperd* in that the handcuffs were not removed at the conclusion of the search, this was because the search eventually turned up the Xanax pills, causing Tippett to decide to place Henderson under arrest.[4]

It is also significant that at the time Henderson made his statements, he was standing on the side of a public highway. The Supreme Court has held:

---

[4] Our review of the patrol car video reflects that it is consistent with Tippett's testimony that he did not initially intend to arrest Henderson for possession of marijuana or paraphernalia, but decided to do so when the Xanax pills were found without an accompanying prescription.

9

[T]he typical traffic stop is public, at least to some degree. Passersby, on foot or in other cars, witness the interaction of officer and motorist. This exposure to public view both reduces the ability of an unscrupulous policeman to use illegitimate means to elicit self-incriminating statements and diminishes the motorist's fear that, if he does not cooperate, he will be subjected to abuse. The fact that the detained motorist typically is confronted by only one or at most two policemen further mutes his sense of vulnerability. In short, the atmosphere surrounding an ordinary traffic stop is substantially less 'police dominated' than that surrounding the kinds of interrogation at issue in *Miranda* itself and in the subsequent cases in which we have applied *Miranda*.

*Berkemer v. McCarty*, 468 U.S. 420, 438-39 (1984) (internal citation omitted). Therefore, in light of the "noncoercive aspect" aspect of a traffic stop, "persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*." *Id.* at 440. If an officer reasonably suspects that the individual has committed, is committing, or is about to commit a crime, "the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Id.* at 439. While a temporary detention pursuant to a traffic stop may escalate to the point where the individual is restrained to the degree associated with a formal arrest and therefore is in custody for *Miranda* purposes, *see id.* at 440, that did not occur in this case. Henderson was pulled over pursuant to a lawful traffic stop, was handcuffed for the limited purpose of searching his vehicle after officers detected a strong odor of marijuana, and was expressly informed that he was not under arrest. Viewing the evidence in the light most favorable to the trial court's ruling, we hold that the circumstances were not such that a reasonable person would believe he was restrained to the degree of a formal arrest. Therefore, because Henderson was not in custody at the time he answered, "No, it's mine," in response to Tippett's question, "Whose weed is it?" the trial court did not abuse its discretion in refusing to suppress that statement. Henderson's second issue is overruled.

10

## CONCLUSION

Having found no error in the trial court's ruling on Henderson's motion to suppress, we affirm the judgment of conviction.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed:   September 23, 2009

Do Not Publish

11