

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-11-00051-CR

_____

**THOMAS NAVARRO,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

_____

**From the 272nd District Court**
**Brazos County, Texas**
**Trial Court No. 10-00452-CRF-272**

_____

## MEMORANDUM  OPINION

_____

Appellant, Thomas Navarro, was charged by indictment with assault causing bodily injury to a family member, a third-degree felony.[1]  *See* TEX. PENAL CODE ANN. § 22.01(a), (b)(2) (West 2011).  A jury convicted Navarro of the charged offense, and the trial court subsequently found the enhancement paragraph contained in the indictment to be true and assessed punishment at fourteen years' incarceration in the Texas Department of Criminal Justice—Institutional Division.  In three issues, Navarro argues

---

[1] The indictment also included an enhancement paragraph pertaining to Navarro's prior conviction for felony burglary of a habitation.  *See* TEX. PENAL CODE ANN. § 30.02(a) (West 2011).

that: (1) the trial court abused its discretion in denying his motion to suppress statements made to the arresting officer; (2) the trial court erroneously overruled his objection to the State's jury argument, which allegedly struck at him over the shoulders of defense counsel; and (3) his sentence was improperly enhanced. We affirm.

## I. MOTION TO SUPPRESS

In his first issue, Navarro argues that the trial court abused its discretion in denying his motion to suppress statements he made to the arresting officer. Navarro asserts that the statements he made were the product of an unwarned custodial interrogation and, thus, should have been suppressed. We disagree.

### A. Standard of Review

A trial court's denial of a motion to suppress is reviewed for an abuse of discretion. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review the evidence in the light most favorable to the trial court's ruling, *see Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007), and we review the trial court's ruling under a bifurcated standard of review, giving almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on the evaluation of credibility and demeanor, and (2) application-of-the-law-to-fact questions that turn on the evaluation of credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). However, when application-of-the-law-to-the-fact questions do not turn on credibility and demeanor of the witnesses, we review the trial court's ruling on those questions de novo. *Id.* Furthermore, we review the record to determine whether the trial court's ruling is supported by the record and

correct under some theory of law applicable to the case. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

**B. Applicable Law**

Oral confessions of guilt or oral admissions against interest made by a suspect who is in custody are not admissible unless made in compliance with the provisions of article 38.22 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West 2005); *Shiflet v. State*, 732 S.W.2d 622, 623 (Tex. Crim. App. 1985); *see also Narramore v. State*, No. 06-05-00226-CR, 2007 Tex. App. LEXIS 2104, at *11 (Tex. App.—Texarkana Mar. 20, 2007, pet. ref'd) (mem. op., not designated for publication). However, if a person makes an oral confession of guilt or an oral admission against interest while not in custody, a different rule applies. *See Shiflet*, 732 S.W.2d at 623; *see also Narramore*, 2007 Tex. App. LEIXS 2104, at *11. Article 38.22, section 5 provides that: "Nothing in this article precludes the admission of a statement made by the accused . . . that does not stem from custodial interrogation . . . ." TEX. CODE CRIM. PROC. ANN. art. 38.22, § 5. Thus, an oral confession or an oral admission against interest that does not stem from custodial interrogation, and is given freely, voluntarily, and without compulsion or persuasion, is admissible evidence against the accused. *See Shiflet*, 732 S.W.2d 623; *see also Narramore*, 2007 Tex. App. LEXIS 2104, at *11. And, *Miranda* warnings are required only when the questioning by police stems from custodial interrogation. *See Dowthitt v. State*, 931 S.W.2d 244, 263 (Tex. Crim. App. 1996). The crux of this issue is whether Navarro was in custody and was, thus, required

to be provided *Miranda* warnings when he made oral statements against his interest to the arresting officer.

Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966). A person is in "custody" only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree that he was not at liberty to leave. *See Dowthitt*, 931 S.W.2d at 254 (citing *Stansbury v. California*, 511 U.S. 318, 323-25, 114 S. Ct. 1526, 1529-30, 128 L. Ed. 2d 293 (1994)); *see also Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). The determination of "custody" must be made on an ad hoc basis, after considering all of the objective circumstances. *Herrera*, 241 S.W.3d at 526.[2]

At least four general situations may constitute "custody": (1) the suspect is physically deprived of his freedom of action in any significant way; (2) a law enforcement officer tells the suspect that he cannot leave; (3) law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave. *Gardner v. State*, 306 S.W.3d 274, 294 (Tex. Crim. App. 2009). In all four circumstances, the initial determination of "custody" depends on the objective circumstances of the interrogation,

---

[2] In *Herrera*, the court concluded that the construction of "custody" with respect to article 38.22 is consistent with the meaning of "custody" for purposes of *Miranda*. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007).

not on the subjective views of the interrogating officer or the person being questioned. *Dowthitt*, 931 S.W.2d at 255. In any event, in the first three circumstances, the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention. *Id.* With regard to the fourth circumstance, the officers' knowledge of probable cause must "be manifested to the suspect" to constitute "custody." *Id.*

Furthermore, in determining whether an encounter amounts to an arrest or an investigative detention, the court of criminal appeals has listed the following factors to consider: (1) the amount of force displayed; (2) the duration of a detention; (3) the efficiency of the investigative process and whether it is conducted at the original location or whether the person is transported to another location; (4) "the officer's expressed intent—that is, whether he told the detained person that he was under arrest or was being detained only for a temporary investigation"; and (5) any other relevant factors. *State v. Sheppard*, 271 S.W.3d 281, 291 (Tex. Crim. App. 2008).

The subjective intent of law enforcement officers to arrest is irrelevant, unless that intent in somehow communicated or otherwise manifested to the suspect. *Stansbury*, 511 U.S. at 323-25, 114 S. Ct. at 1529-30; *Herrera*, 241 S.W.3d at 525-26. An initial consensual encounter with police can be transformed into a custodial detention where the police procedures become qualitatively and quantitatively so intrusive with respect to a person's freedom of movement. *See Kaupp v. Texas*, 538 U.S. 626, 630, 123 S. Ct. 1843, 1847, 155 L. Ed. 2d 814 (2003).

A trial judge's ultimate "custody" determination "presents a mixed question of law and fact." *Herrera*, 241 S.W.3d at 526 (citing *Thompson v. Keohane*, 516 U.S. 112-13, 116 S. Ct. 457, 465-66, 133 L. Ed. 2d 383 (1995)). Therefore, we afford almost total deference to a trial judge's "custody" determination when the questions of historical fact turn on credibility and demeanor; otherwise, we review the trial judge's "custody" determination de novo. *Id.* Furthermore, when a trial judge denies a motion to suppress and does not enter findings of fact, as is the case here, the evidence is viewed "in the light most favorable to the trial court's ruling," and we "assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Id.*

Further, we interpret Navarro's rights under article I, section 9 of the Texas Constitution consistently with the interpretation of his Fourth Amendment rights under the federal constitution by the United States Supreme Court and the Texas Court of Criminal Appeals. *Sargent v. State*, 56 S.W.3d 720, 724 n.2 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). As such, the standard for investigative stops is the same under the Texas Constitution as under the United States Constitution. *See Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997).

## C. Discussion

At the suppression hearing, Bryan Police Department Officer William Dunford testified that he was dispatched to the duplex in which Navarro and others lived due to a 911 call. Once he arrived at the residence, Officer Dunford got out of his vehicle and walked towards the duplex. He heard yelling coming from inside the duplex. When

Officer Dunford and his partner, Officer Torres, knocked on the door, they were greeted by Michele Reeves. When she opened the door, Officer Dunford noticed that Reeves was "holding her face, and it looked like she had like a rug burn on her right side of the face whenever she moved her hand." Officer Dunford recalled that the injury to Reeves's face appeared to be painful. Reeves allowed the officers to enter the house, and she told them that she had "gotten into an argument with Mr. Navarro about paying rent and that he pushed her, shoved her to the ground causing her to hit her face. She said he bit her hand." After taking Reeves's statement, Officer Dunford went to the back of the house to speak with Navarro. Officer Dunford remembered that several other individuals were in the house, including Natalie Nobles, who was trying to repair a window at that time.

Once Officer Dunford reached the back room, he observed Navarro "lying on [a] mattress on the floor holding a beer." Officer Dunford asked Nobles to leave the room, and he began speaking with Navarro. Officer Dunford acknowledged that he did not read Navarro his *Miranda* rights at this time, but he noted that Navarro was not under arrest but was simply "[u]nder a temporary detention pending the investigation."[3] Navarro's hands and arms were bleeding, but he declined any medical attention. Navarro explained that he got the lacerations on his hands and arms by punching a window after having an argument. Navarro told Officer Dunford that everything was "okay" and asked him to leave. Officer Dunford testified that he developed probable

---

[3] At no point was Navarro physically restrained until Officer Dunford arrested him after developing probable cause.

cause to arrest Navarro when Navarro stated that: (1) Reeves had bit and hit herself in order to get him in trouble; and (2) he "felt guilty for doing something." Officer Dunford admitted that Navarro was temporarily deprived of his freedom of movement pending the investigation of the incident, though he noted that he had several prior encounters with Navarro which always "ended with [Navarro] leaving."[4]

In any event, before Officer Dunford arrested Navarro, he asked Nobles to enter the room and tell him about what had happened. However, before she told her side of the story, Navarro interrupted and instructed her to "tell [Officer Dunford] nothing happened." Nevertheless, Nobles told Officer Dunford that "she could hear arguing and that she heard what sound[ed] like wrestling, something getting physical." Officer Dunford then asked Nobles to leave the room so he could clarify Navarro's story "because his story wasn't matching up with the evidence I had on scene." At this point, Navarro stated that Reeves bit and hit herself to get him in trouble. According to Officer Dunford, the temporary detention lasted approximately ten to fifteen minutes.

After arresting Navarro, Officer Dunford did not ask him any more questions. Officer Dunford concluded that family violence had occurred based on "[t]he broken window, the injuries to Mrs. Reeves, the testimony from Mrs. Reeves, testimony from Mrs. Nobles, then Mr. Navarro's conflicting story." Officer Dunford also discovered that Reeves and Navarro were dating and lived together in the duplex. Based on his

---

[4] Officer Dunford recalled several instances in which the police got involved in disputes between Navarro and his ex-wife; this information factored into his decision as to whether violence would continue.

investigation, Officer Dunford believed that, had he not arrested Navarro and removed him from the duplex, the violence would have continued.

Based on our review of the record, we cannot say that Navarro's statements to Officer Dunford were the product of custodial interrogation, which required Officer Dunford to administer *Miranda* warnings prior to questioning Navarro. Our conclusion is premised on the following facts: (1) Navarro was lying on the bed holding a beer while Officer Dunford asked questions; (2) Officer Dunford never told Navarro that he was under arrest, nor did he indicate that Navarro was under arrest when the questioning commenced; (3) the encounter lasted only fifteen minutes and the questions were in furtherance of a temporary investigation to determine whether Navarro had in fact assaulted Reeves; (4) the record does not reflect that Officer Dunford used force or handcuffs when questioning Navarro; (5) Navarro rejected Officer Dunford's offer of medical treatment for the lacerations on his hands and arms, which also undermines an argument that Navarro's freedom of movement was significantly restricted; and (6) Officer Dunford conducted his investigation at the location where he first encountered Navarro. *See Terry v. Ohio*, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968); *see also Sheppard*, 271 S.W.3d at 289 (noting that while a person is not free to leave during a temporary detention, the detention allows for an officer to investigate whether a crime had been committed and does not constitute a custodial arrest). Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that Navarro's statements were the product of a temporary detention, not a custodial interrogation.

*See Gardner*, 306 S.W.3d at 294; *Sheppard*, 271 S.W.3d at 291; *Dowthitt*, 931 S.W.2d at 255.

Thus, *Miranda* warnings were not required. *See Dowthitt*, 931 S.W.2d at 263.

Nevertheless, Navarro insists that he should have been provided *Miranda* warnings prior to questioning because Reeves's initial statement alone gave Officer Dunford probable cause to arrest Navarro. Officer Dunford testified that he did not have probable cause to arrest Navarro after only speaking with Reeves. *See Rhodes*, 945 S.W.2d at 117 ("The officer's testimony is a factor to be considered, along with the other facts and circumstances of the detention, in determining whether an arrest has taken place."). Moreover, even if Officer Dunford believed he had probable cause to arrest Navarro prior to the time he actually did arrest, the record does not reflect that this was ever manifested to Navarro. *See Gardner*, 306 S.W.3d at 294; *Dowthitt*, 931 S.W.2d at 255; *see also Abernathy v. State*, 963 S.W.2d 822, 824 (Tex. App.—San Antonio 1998, pet. ref'd) (stating that a police officer's subjective view does not bear upon the question of whether a suspect is in custody for purposes of *Miranda* if the subjective view is not disclosed by the officer to the suspect). Based on the foregoing, we conclude that the trial court did not abuse its discretion in denying Navarro's motion to suppress. *See Guzman*, 955 S.W.2d at 89. Accordingly, Navarro's first issue is overruled.

## II. THE STATE'S JURY ARGUMENT

In his second issue, Navarro complains about the State's closing argument. In particular, Navarro alleges that the State's closing argument "impugn[ed] the integrity and veracity of defense counsel" by arguing that counsel "was simply relying on technicalities to defend his client and seek an acquittal." The State counters that

Navarro waived this issue by failing to pursue an objection to an adverse ruling. In the alternative, the State contends that the complained-of statements were "proper rebuttal argument" and that error, if any, was harmless.

## A. Applicable Law

The court of criminal appeals has consistently held that arguments that strike at a defendant over the shoulder of his defense counsel are improper. *Dinkins v. State*, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995). A prosecutor risks improperly striking at a defendant over the shoulder of counsel when the argument refers to defense counsel personally and when the argument explicitly impugns defense counsel's character. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1988) (op. on reh'g); *Guy v. State*, 160 S.W.3d 606, 617 (Tex. App.—Fort Worth 2005, pet. ref'd). The "over-the-shoulder" rule is designed to protect the defendant from improper prosecutorial character attacks at defense counsel. *Coble v. State*, 871 S.W.2d 192, 205 (Tex. Crim. App. 1993). When evaluating an alleged improper argument, an appellate court views the statement in the context of the entire argument. *Mosley*, 983 S.W.2d at 259.

## B. Discussion

On appeal, Navarro complains about the following statements made by the State:

> [The State]: Ladies and gentlemen, in [defense counsel's] opening statement, he told you something I agree with absolutely. He told you that in this case he wanted you to focus on the essential elements and not get bogged down in the details and not focus on the details. Then what does [defense counsel] do? He gets up and talks to you about technicalities because that's what the defense does when they have nothing left.

| | |
|---|---|
| [Defense counsel]: | Your Honor, I'm going to object to counsel striking at the defendant over defense counsel's shoulders. |
| [The State]: | Characterizing the evidence in the case. |
| THE COURT: | Overrule the objection. |
| [The State]: | The defense strikes out at technicalities when the defense doesn't have anything left. |
| | About the issue of judicial notice, folks, I read the definition . . . . |
| | This case isn't about technicalities. It's not about that. It's about the evidence that's been presented to you on things that matter about this case. |

Based on our review of the record, we conclude that Navarro waived his objection to the prosecutor's closing argument. Texas law requires a party to continue to object each time inadmissible evidence is offered, except when defense counsel requests a running objection or objects out of the presence of the jury to all testimony he deems objectionable on a given subject. *Ethington v. State*, 819 S.W.2d 854, 858-59 (Tex. Crim. App. 1991). Moreover, an error in the admission of evidence is cured when the same evidence comes in elsewhere without objection. *Id.*; *see also Massey v. State*, 933 S.W.2d 141, 149 (Tex. Crim. App. 1996); *Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984). And when a defendant creates the impression that he is abandoning his objection, his initial objection is insufficient to preserve error for appeal. *See Purtell v. State*, 761 S.W.2d 360, 366 (Tex. Crim. App. 1988).

While it is true that Navarro objected to the first statement the prosecutor made regarding technicalities, he did not object to the prosecutor's subsequent references to

technicalities, nor did he obtain a running objection to such remarks. As such, we conclude that Navarro abandoned his objection to the prosecutor's technicality remarks and thus failed to preserve any resulting error for appeal.[5] *See Threadgill v. State*, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004) (holding that defendant waived objection to prosecutor's conduct in striking at defendant over the shoulders of his counsel during closing argument by failing to object); *Mathis v. State*, 67 S.W.3d 918, 926-27 (Tex. Crim. App. 2002) (concluding that defendant waived his argument that the prosecutor committed reversible error when he referred to defendant in closing argument as a "despicable piece of human trash" because defendant failed to object and request a mistrial); *Purtell*, 761 S.W.2d at 366; *see also Valentine v. State*, No. 01-06-00522-CR, 2007 Tex. App. LEXIS 8730, at **12-13 (Tex. App.—Houston [1st Dist.] Nov. 1, 2007, no pet.) (mem. op., not designated for publication) ("By failing to make a timely objection to the State's closing argument, Valentine waived any alleged error."). Accordingly, we overrule Navarro's second issue.

### III. ENHANCEMENT OF NAVARRO'S SENTENCE

In his third issue, Navarro asserts that the enhancement paragraph contained in the indictment was never read at punishment and, thus, no plea was taken. As such, Navarro, relying heavily on Texas Code of Criminal Procedure article 36.01, argues that no issue was joined and enhancement from a third-degree felony to a second-degree

---

[5] Furthermore, to preserve error in cases of prosecutorial misconduct, the defendant must: (1) make a timely and specific objection; (2) request an instruction that the jury disregard the matter improperly placed before the jury; and (3) move for a mistrial. TEX. R. APP. P. 33.1(a); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). Here, in addition to his failure to object to each time the prosecutor referred to technicalities, Navarro failed to request a jury instruction and move for a mistrial. *See* TEX. R. APP. P. 33.1(a); *see also Cockrell*, 933 S.W.2d at 89.

felony is impermissible. *See* TEX. CODE CRIM. PROC. ANN. art. 36.01 (West 2007). The State contends that this issue is waived because Navarro did not object when the trial court failed to read the enhancement paragraph at the start of the punishment hearing. In the alternative, the State argues that, because Navarro entered into a stipulation of the evidence, there is sufficient evidence in the record to support the trial court's finding of true to the enhancement paragraph.

Article 36.01 of the Texas Code of Criminal Procedure specifies the order of proceeding for a jury trial. *Id.* "When prior convictions are alleged for purposes of enhancement only and are not jurisdictional, that portion of the indictment or information reciting such convictions shall not be read until the hearing on punishment is held . . . ." *Id.* art. 36.01(a)(1). The reading of the enhancement paragraphs at the penalty stage of a bifurcated trial and the entry of the defendant's responsive plea are mandatory. *Turner v. State*, 897 S.W.2d 786, 788 (Tex. Crim. App. 1995). Without these steps, no issue is joined between the State and the defendant, and neither the jury nor the defendant is informed of the precise terms of the charge. *See Hernandez v. State*, 190 S.W.3d 856, 867 (Tex. App.—Corpus Christi 2006, no pet.); *Linton v. State*, 15 S.W.3d 615, 620 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). "After the enhancement and plea are read to the jury, the State is required to introduce evidence in support of the enhancements." *Hernandez*, 190 S.W.3d at 867.

Furthermore, the court of criminal appeals has held that not reading the enhancement paragraphs and having the defendant plead to them could mislead a defendant into believing the State has abandoned the enhancement paragraphs. *Turner*,

897 S.W.2d at 789. However, "[i]f the enhancements are in the indictment and the State does not abandon them, the defendant is on notice that the State is still seeking a greater penalty range." *Marshall v. State*, 185 S.W.3d 899, 903 (Tex. Crim. App. 2006).

The record indicates that the trial court conducted the punishment hearing; thus, Navarro's reliance on article 36.01, which is confined to jury proceedings, is misplaced. *See* TEX. CODE CRIM. PROC. ANN. art. 36.01; *see also Davis v. State*, 970 S.W.2d 747, 749 (Tex. App.—Houston [14th Dist.] 1998, no pet.). And perhaps more importantly, the record does not reflect that Navarro objected to the trial court's failure to read the enhancement paragraph at the start of the punishment hearing. In *Davis*, the Fourteenth Court of Appeals stated the following:

> At the trial court level, Davis failed to object to the trial court's failure to read the indictment and enhancement paragraphs before the punishment hearing. The Texas Court of Criminal Appeals has stated that an appellant may not raise this question for the first time on appeal. *See Reed v. State*, 500 S.W.2d 497, 499 (Tex. Crim. App. 1973); *see also Hardman v. State*, 614 S.W.2d 123, 125-26 (Tex. Crim. App. [Panel Op.] 1981) (citing *Reed* for the proposition that the appellant may not complain for the first time on appeal about the court's failure to read the indictment in a bench trial). In *Reed*, the trial judge proceeded with the punishment stage of trial after the jury returned a guilty verdict but before the court read that portion of the indictment alleging a prior conviction for enhancement punishment. *See Reed*, 500 S.W.2d at 498. The defense counsel failed to object to the trial court's omission. *See* 500 S.W.2d at 498-99. On appeal, the Texas Court of Criminal Appeals stated, "had there been an objection, the problem could have been easily remedied by reintroducing the evidence, if any had been offered after the enhancement allegations of the indictment had been read, and the appellant's plea thereto entered." *Id.* at 499.

970 S.W.2d at 749. The *Davis* court also noted:

> Additionally, in reaching our decision, we cannot help but point out the purpose of reading all of the indictment, including the enhancement

paragraphs, to the jury: that is to join the issue in the juror's minds so that they will know what issues they must decide. When the judge, and not the jury, is making the decision on enhancement, we do not have to clarify issues in the same way we would for a jury. For example, in this cause, the entire indictment was read aloud to the court and to Davis at the arraignment. In addition, the judge took Davis' plea of true to the enhancement paragraphs at the arraignment and then heard Davis' stipulation to the truth of the enhancement paragraphs at the punishment hearing.[6] Clearly, the issue was joined, the judge knew the contents of the indictment, and knew about the enhancement paragraphs. It would not serve any useful purpose to require the judge also to read the enhancement paragraphs out loud to himself.

*Id.* at 749-50.

Because Navarro did not object to the trial court's failure to read the enhancement paragraph at the start of the punishment hearing, we conclude that this issue is waived. *See id.* at 749. And, even if Navarro had preserved this issue, we fail to see how the trial court's failure to read the enhancement paragraph at the start of the punishment hearing harmed him, especially considering the trial court conducted the punishment hearing, Navarro stipulated to the evidence documenting his prior convictions, and there is no evidence that the State intended to abandon the enhancement paragraph. *See id.* at 749-50. Accordingly, we overrule Navarro's third issue.

### IV. CONCLUSION

Having overruled all of Navarro's issues on appeal, we affirm.

---

[6] In this case, Navarro admitted at the punishment hearing that he had been convicted of sixteen prior misdemeanor offenses and five felonies and that the corresponding judgments and sentences were true and correct. With regard to Navarro's burglary-of-a-habitation conviction, Navarro's counsel did not object to the admission of the corresponding judgment and sentence. Moreover, in his opening statement at the punishment hearing, the prosecutor referenced Navarro's burglary-of-a-habitation conviction, indicating that the State did not intend to abandon the enhancement paragraph.

AL SCOGGINS
Justice


Before Chief Justice Gray,
         Justice Davis, and
         Justice Scoggins
         (Chief Justice Gray concurs in the judgment without a separate opinion)
Affirmed
Opinion delivered and filed October 5, 2011
Do not publish
[CR25]